In re TEXACO INC., Texaco Capital Inc., Texaco Capital N.V., Debtors.

**TRANS WORLD AIRLINES, INC., ACF Industries, Incorporated, Swan Management Corp. and Unicorn Associates Corporation, Plaintiffs,**

v.

**TEXACO INC., Defendant,**

**Pennzoil Company, Defendant–Intervenor.**

Bankruptcy Nos. 87 B 20142–87 B 20144.

Adv. No. 88 ADV. 6002.

United States Bankruptcy Court, S.D. New York.

Jan. 22, 1988.

**814**

Weil, Gotshal & Manges, Cravath, Swaine & Moore, New York City, for debtors.

Levin & Weintraub & Crames, New York City, Baker & Botts, Houston, Tex., Stutman, Treister & Glatt, P.C., Los Angeles, Cal., for Pennzoil Co.

Gordon Hurwitz Butowsky Weitzen Shalov & Weil, New York City, for plaintiffs-respondents.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for General Committee.

Keck, Mahin & Cate, Chicago, Ill., for Equity Committee.

## TEXACO AND PENNZOIL MOTIONS TO DISMISS ICAHN GROUPS' COMPLAINT FOR A DECLARATORY JUDGMENT VOIDING ARTICLE III OF TEXACO–PENNZOIL STIPULATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtors, Texaco Inc. and its two wholly owned financial subsidiaries, Texaco Capital Inc. and Texaco Capital, N.V. have moved to dismiss the Respondents' complaint dated January 12, 1988. The Defendant–Intervenor, Pennzoil Company ("Pennzoil") has also moved for an order dismissing the Respondents' complaint. The return date of the dismissal motions was January 20, 1988.

On January 12, 1988, the Respondents, Trans World Air Lines, Inc., ACF Industries, Incorporated, Swan Management Corp. and Unicorn Associates Corporation (collectively referred to as the "Icahn Group") filed a complaint which named only Texaco Inc. as a Defendant. Pursuant to a stipulation among the Plaintiffs, Texaco and Pennzoil, the parties have stipulated that Pennzoil may intervene as a party-defendant.

In their complaint, the Icahn Group Plaintiffs seek a declaratory judgment nullifying Article III of a Stipulation and Agreement, dated December 19, 1987, between Texaco and Pennzoil. The Stipulation and Agreement (referred to as "the Stipulation") relates to the conditional settlement of litigation between Pennzoil and Texaco. The Stipulation contains provisions governing Texaco's and Pennzoil's conduct in furtherance of the goal of concluding the Texaco–Pennzoil litigation by means of a confirmed plan of reorganization. The complete Stipulation is set forth in an appendix to this decision. The provisions of Article III, which the Icahn Group Plaintiff argue is void and unenforceable, read as follows:

III. Pennzoil and Texaco will use their best efforts to obtain confirmation of the Plan in accordance with the Bankruptcy Code as soon as practicable in the Reorganization Case. Pennzoil and Texaco will take all necessary actions to achieve confirmation including, in the case of Texaco, recommending to shareholders that the Plan be confirmed. Pennzoil and Texaco shall not agree to consent to, or vote for any modification of the Plan unless such modification has been agreed to by the other party. Nei-

ther Pennzoil nor Texaco shall vote for, consent to, support or participate in the formulation of any other plan in the Reorganization Case.

The complaint asserts two distinct grounds for voiding Article III of the Stipulation. The first ground is that Texaco has solicited and procured Pennzoil's acceptance of its plan, and rejection of all alternative reorganizational plans, before a disclosure statement was approved by the court, in violation of 11 U.S.C. § 1125(b). The second ground for invalidating Article III of the Stipulation is that the court's prior approval was required because the Stipulation was made outside the ordinary course of Texaco's business, in violation of 11 U.S. C. § 363(b)(1).

Texaco has moved for a dismissal on various grounds, namely (1) The Stipulation does not violate 11 U.S.C. § 1125(b); (2) The Stipulation does not require court approval under 11 U.S.C. § 363(b)(1); (3) The complaint fails to raise an actual controversy because the Icahn Group is not authorized to file a competing plan; and (4) The Icahn Group lacks standing to contest the enforceability of an agreement between Texaco and Pennzoil.

Pennzoil's motion to dismiss the complaint is premised on Bankruptcy Rule 7012(b) and Federal Rule 12(b)(6), on the theory that the complaint fails to state a claim upon which relief can be granted.

## THE STIPULATION DOES NOT VIOLATE 11 U.S.C. § 1125(b)

■ Section 1125(b) governs the solicitation of acceptances or rejections of a plan of reorganization and states:

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure state-

ment without a valuation of the debtor or an appraisal of the debtor's assets.

Unless Texaco was prepared to pay the full amount of Pennzoil's $10.3 billion judgment which it vigorously disputed, Texaco would have difficulty in confirming any plan of reorganization that proposed to impair Pennzoil's claim by paying less than the full amount, unless Pennzoil accepted the plan within the meaning of 11 U.S.C. § 1129(a)(8)(A). Therefore, Texaco negotiated a settlement with Pennzoil whereby Pennzoil and Texaco agreed to use their best efforts to obtain confirmation of a plan that proposed to pay $3 billion dollars to Pennzoil, which is less than the full amount of Pennzoil's claim. Manifestly, such a settlement had to be binding on Texaco and Pennzoil before Texaco could submit its plan of reorganization. If Pennzoil were free to support another plan while Texaco's plan was still capable of being approved, the negotiations between Texaco and Pennzoil would be meaningless. Pennzoil's support of Texaco's proposed plan is fundamental to Texaco's efforts to effect a confirmable plan of reorganization. Texaco's willingness to forego further litigation with Pennzoil for a payment of $3 billion is predicated on the fact that Pennzoil's support will enable Texaco to propose a confirmable plan.

The Stipulation in question does not amount to a solicitation by Texaco of Pennzoil's consent without a required disclosure statement, in violation of 11 U.S.C. § 1125(b), because the Stipulation does not constitute a solicitation of Pennzoil's acceptance or rejection of Texaco's plan. Pennzoil's Stipulation not to "vote for, consent to, support or participate in the formulation of any other plan" does not mean that Pennzoil has effectively accepted the Joint Plan. The solicitation of Pennzoil's vote must await the approval of the disclosure statement. Indeed, Pennzoil is not required to cast any ballot at all.

The fact that Pennzoil has agreed not to "vote for, consent to, support or participate in the formulation of any other plan" does not violate the solicitation requirements under 1125(b) when, in fact, there is no other

plan on file which would require a disclosure statement. Section 1125(b) relates to the voting process with respect to filed plans. A disclosure statement must be approved by the court as to any plan before acceptances or rejections of such plan may be solicited. If a plan has not been filed, no disclosure statement is called for under 11 U.S.C. § 1125. Therefore, an agreement not to support any other plans in the future does not amount to the solicitation of a rejection of a plan which must be accompanied by a court approved disclosure statement. Such a *carte blanche* agreement as to future unfiled plans does not offend 11 U.S.C. § 1125(b).

The Stipulation is neither secret nor illegal. Texaco filed the Stipulation with the Securities and Exchange Commission and referred to it in its Disclosure Statement filed with this court. The proposal in the Joint Plan for the settlement of Pennzoil's claim for $3 billion dollars is not effective unless accepted by the requisite majority of shareholders and approved by this court. Unless the plan is confirmed by this court, there is no settlement. In determining the issue of confirmation, this court must consider the interests of creditors and shareholders as required under 11 U.S.C. § 1129(a)(7). This court must also determine that the plan has been proposed in good faith and not by any means forbidden by law, as required under 11 U.S.C. § 1129(a)(3). Thus, the Icahn Group's argument that under the Stipulation between Texaco and Pennzoil, Texaco is entitled to settle its lawsuit with Pennzoil and pay Pennzoil $3 billion without court approval, misses the mark. Not only is court approval required, but at least two-thirds in amount of the allowed interests of shareholders who vote must accept the plan, as required under 11 U.S.C. § 1126(d). Unless the requisite majority of shareholders first consent to the plan, followed by a confirmation hearing which requires this court's approval, there will be no effective settlement pursuant to which Texaco would be obligated to pay, and Pennzoil would be entitled to receive, a $3 billion amount.

Even if Article III of the Stipulation amounted to an improper solicitation of an acceptance of the Texaco Joint Plan and an improper rejection of any other plan, which is not the case, a party in interest who seeks to obtain relief from an improper solicitation under the Bankruptcy Code must obtain such relief in accordance with the provisions of the Code. Pursuant to 11 U.S.C. § 1126(e), the exclusive relief afforded under the Code is to have such improperly solicited acceptance or rejection disregarded for purposes of computing the vote on the plan. This section states:

(e) On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

In view of the fact that Pennzoil has not yet cast any ballot either accepting or rejecting the Texaco Joint Plan, or rejecting any other alternative plan, it follows that there is no basis for entering an order declaring that Article III is unenforceable and void.

## THE STIPULATION DOES NOT VIOLATE 11 U.S.C. § 363(b)(1)

The complaint alleges that the Stipulation between Texaco and Pennzoil was made outside the ordinary course of Texaco's business and that Texaco did not seek this court's approval before entering into it. As was previously noted with respect to the first ground in the complaint, the settlement of Pennzoil's claim against Texaco is conditioned upon this court's approval of the plan. This court's prior approval of negotiations leading to a confirmation is not required because a debtor is encouraged to negotiate with interested parties in accordance with the exclusivity conferred under 11 U.S.C. § 1121(b).

The reference in the complaint to the fact that the Stipulation was made outside the course of Texaco's business, presumably intends to implicate 11 U.S.C. § 363(b)(1), which reads:

(b)(1) The trustee, after notice and a hearing, may use, sell or lease, other

than in the ordinary course of business, property of the estate.

Manifestly, the Stipulation does not involve Texaco's right to use, sell or lease property of the estate. The Icahn Group refers to the fact that by binding itself to Pennzoil with respect to the Joint Plan, Texaco used and disposed of a "property right". However, this so-called property right did not constitute "property of the estate" as referred to in 11 U.S.C. § 363(b)(1) and as defined under 11 U.S.C. § 541. The term "property of the estate", in 11 U.S.C. § 541 relates to property interests of the debtor "as of the commencement of the case." Texaco's right to negotiate and file a plan of reorganization arose after the commencement of the Chapter 11 cases. This right to negotiate and file a plan is not lost by a debtor under 11 U.S.C. § 1121(c), even if a trustee is appointed in accordance with 11 U.S.C. § 1104. If Texaco's right to formulate a plan is regarded as property of the estate, a trustee appointed in the Chapter 11 case would have the exclusive right to propose and file a plan. However, even in the event of the appointment of a trustee, a Chapter 11 debtor may file a plan under 11 U.S.C. § 1121(c), because the right to negotiate and file a plan is not "property of the estate".

Moreover, the reference to Texaco's business operations does not mean that the reorganizational process under which Texaco must formulate a plan of reorganization is a business activity. No business justification is required for negotiating a plan of arrangement, whereas a business justification must be shown to support a debtor's using, selling or leasing property out of the ordinary course of business. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–1071 (2d Cir.1983).

In the Icahn Group's Supplemental Memorandum of Law, dated January 22, 1988, which was submitted in opposition to the motions to dismiss the complaint, it is argued that:

[Texaco] is agreeing to delay filing a petition for review and is further agreeing temporarily to refrain from seeking support of its petition. Plainly, Texaco is using its most valuable asset outside the ordinary course of business. Section 363(b) of the Code undeniably conditions such use on prior court approval.

This argument elides the point that the agreement between Texaco and Pennzoil to delay a *certiorari* petition to the United States Supreme Court is contained in Article I of the December 19, 1987 Stipulation and Agreement. However, the Icahn Group's complaint with regard to the so-called secret agreement seeks to impugn the validity of the Stipulation because the Icahn Group asserts that Article III of the agreement violates the Bankruptcy Code. The language in the complaint addressed to this point is contained in paragraphs # 15 and # 16 of such complaint, which read as follows:

15. Upon information and belief, Texaco entered into Article III of the Secret Agreement solely for the purpose of wrongfully depriving other parties-in-interest of an opportunity to propose legitimate alternatives for Texaco, in violation of the letter and spirit of the Bankruptcy Code.

16. Moreover, the Secret Agreement was made outside the ordinary course of Texaco's business. Even if not violative of the Bankruptcy Code, the enforceability of the Secret Agreement is conditioned by law upon Bankruptcy Court approval thereof, which Texaco never sought or obtained.

The agreement to delay filing a petition for *certiorari*, as expressed in Article I of the December 19, 1987 Stipulation and Agreement had nothing to do with "wrongfully depriving other parties-in-interest of an opportunity to propose legitimate alternatives for Texaco". Thus, regardless of the fact that Texaco's right to petition to the United States Supreme Court might have reference to a prepetition interest in property within the meaning of 11 U.S.C. § 541, the restrictive language in Article III of the December 19, 1987 Stipulation and Agreement, wherein Texaco and Pennzoil stipulated not to support any other plan in the reorganization cases, does not

deal with a prepetition property right of Texaco. The right to formulate and file a plan of reorganization is neither prepetition in nature, nor is it an interest in property of the estate within the meaning of 11 U.S.C. § 541.

In sum, 11 U.S.C. § 363(b)(1) simply has no application to the Stipulation which Texaco and Pennzoil negotiated in furtherance of the goal of effecting a confirmed plan or reorganization. Hence, prior court approval of the Stipulation was not required and the lack of such prior court approval did not render the Stipulation unenforceable or void.

### THE MOTIONS TO DISMISS

A motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7012, must be granted when it appears with certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dioguardi v. Durning*, 139 F.2d 774 (2d Cir.1944).

In the instant case, the Icahn Group's complaint seeking a declaratory judgment that Article III of the Stipulation is unenforceable and void is totally unsupportable under either 11 U.S.C. § 1125(b), or under 11 U.S.C. § 363(b)(1), the two grounds asserted in the complaint.

Accordingly the motions made by Texaco and Pennzoil to dismiss the complaint are granted.

SETTLE ORDER on notice.

### APPENDIX

### STIPULATION AND AGREEMENT

This Stipulation and Agreement is dated and effective this 19th day of December, 1987, between Pennzoil Company ("Pennzoil") and Texaco Inc., as a Debtor and Debtor in Possession ("Texaco") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in chapter 11 Case No. 87 B 20142 (HS) pending in the Bankruptcy Court of the United States District Court for the Southern District of New York (the "Reorganization Case"). This Stipulation and Agreement is made consistent with an order entered in the Reorganization Case entitled "Order Modifying Automatic Stay of the Bankruptcy Code to Allow Prosecution and Determination Only of Appellate Proceedings From Judgment Entered in the Action Entitled Pennzoil Company, *Plaintiff* v. Texaco Inc., *Defendant,* Case No. 84–05905," dated April 23, 1987.

RECITALS:

1. Texaco has announced its intention to file with the United States Supreme Court a petition for a writ of certiorari (the "Petition") to obtain review of an order of the Court of Appeals for the First Supreme Judicial District of the State of Texas, dated April 27, 1987, and entered in the action entitled *Texaco Inc., Appellant v. Pennzoil Company, Appellee,* No. 01–86–0216–CV.

2. Pursuant to 28 U.S.C. § 2101(c), Texaco's Petition must be filed with the United States Supreme Court by February 1, 1988, unless such time is extended by a Justice of the United States Supreme Court.

3. Pursuant to Rule 22.1 of the United States Supreme Court Rules, any response to the Petition that Pennzoil might file (the "Response") must be filed within thirty (30) days after the Petition is filed unless said period is extended pursuant to Rule 29.4 of the United States Supreme Court Rules.

4. In view of the fact that Pennzoil and Texaco have agreed upon and have jointly filed as proponents a plan of reorganization (the "Plan") in the Reorganization Case, which Plan provides, *inter alia,* for the settlement and resolution of the Pennzoil/Texaco controversy and all related litigation and claims between Pennzoil and Texaco (the "Controversy"), both Pennzoil and Texaco are desirous of extending to the legal maxima the respective periods of time during which the Petition and the Response must be filed so as to provide every opportunity for Pennzoil and Texaco to obtain an order of the Bankruptcy Court confirming the Plan.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by both Pennzoil and Texaco, the parties stipulate and agree as follows:

I. Pennzoil and Texaco will use their best efforts, both individually and jointly, to obtain allowable extensions, as set forth in this Stipulation and Agreement, within which to file the Petition and the Response and will undertake the following actions:

a. Texaco will file a request with the appropriate Justice of the United States Supreme Court not later than January 15, 1988, that it be granted an additional 60 days within which to file its Petition and Texaco will be authorized to state in its request that Pennzoil has no objection to said extension.

b. Texaco will not file its Petition before the last day (which is not a Sunday or a holiday observed by the United States Supreme Court) immediately preceding the final day of the period (including any extensions) within which the Petition must be filed.

c. Not later than eleven days before its Response is due, Pennzoil will file a request for an extension of time to file its Response. Pennzoil will attempt to obtain an extension of 60 days within which to file its Response, but, in its own discretion, it may request one or more extensions of lesser duration provided that, when added together, the requested extensions do not exceed 60 days. For each such requested extension up to an aggregate requested extension of 60 days, Pennzoil will be authorized to state in its request that Texaco has no objection to each requested extension.

d. Pennzoil will not file its Response before the last day (which is not a Sunday or a holiday observed by the United States Supreme Court) immediately preceding the final day of the period (including any extensions) within which the Response must be filed.

e. Pennzoil shall support and urge other claimants and other parties in interest to support any requests made by Texaco and its affiliated debtors pursuant to section 1121(d) of the Bankruptcy Code to extend the exclusive periods during which only the debtors may propose a plan(s) of reorganization and solicit acceptances thereof; *provided, however,* that (x) any extensions requested shall not extend beyond fifteen (15) days from the date of the termination of this Stipulation and Agreement as to the proposal of a plan of reorganization, and sixty (60) days from the end of such fifteen (15) day period in order to solicit acceptances of any plan of reorganization proposed, and (y) any extensions shall not preclude the joint proposal of a plan of reorganization by Texaco and Pennzoil.

II. In a further effort to provide the greatest opportunity for Pennzoil and Texaco to obtain an order of the Bankruptcy Court confirming the Plan, Pennzoil and Texaco will not initiate any further action to persuade or induce the Solicitor General of the United States or any other federal or state governmental agency or official to express any public position (i) as to the merits of the Petition or (ii) whether any such agency or official intends to file a brief with the United States Supreme Court (whether supporting or opposing said Petition) until a date not earlier than ten (10) days prior to the last day upon which Pennzoil may file its Response (as such time may have been extended). Texaco believes, in light of the risks inherent in continued prosecution of the Petition and the strong views expressed by the Official Committee of General Unsecured Creditors of Texaco Inc. *et al.* and the Official Committee of Equity Security Holders of Texaco Inc., it would be in the interests of Texaco's shareholders to accept the Plan and Texaco will so state in the Disclosure Statement.

III. Pennzoil and Texaco will use their best efforts to obtain confirmation of the Plan in accordance with the Bankruptcy Code as soon as practicable in the Reorganization Case. Pennzoil and Texaco will take all necessary actions to achieve confirmation including, in the case of Texaco, recommending to shareholders that the Plan be confirmed. Pennzoil and Texaco shall not agree to, consent to, or vote for any modification of the Plan unless such

modification has been agreed to by the other party. Neither Pennzoil nor Texaco shall vote for, consent to, support or participate in the formulation of any other plan in the Reorganization Case.

IV. This Stipulation and Agreement may not be amended except by an instrument in writing signed by each of the parties hereto.

V. THIS STIPULATION AND AGREEMENT SHALL BE GOVERNED IN ALL RESPECTS, INCLUDING VALIDITY, INTERPRETATION AND EFFECT, BY, AND CONSTRUED AND ENFORCED UNDER, THE BANKRUPTCY LAWS OF THE UNITED STATES AND THE LAWS OF THE STATE OF NEW YORK.

VI. This Stipulation and Agreement and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and assigns.

VII. Except as provided in paragraph I.(e), this Stipulation and Agreement shall terminate and shall be of no further force or effect if any of the conditions precedent to confirmation and resolution of the Controversy, as specified in the Plan or any other proposed mutually agreeable plan of reorganization for Texaco, has become incapable of satisfaction, and compliance with such has not been waived. In the event of termination of this Stipulation and Agreement, Pennzoil and Texaco forthwith may take such action as each may deem appropriate in respect of the Petition, Response, Controversy and the matters specified in paragraph II hereof.

VIII. This Stipulation and Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Signed and effective as of the first date written above.

**PENNZOIL COMPANY**

BY: _Its Chairman of the Board and CEO_

**TEXACO INC., DEBTOR AND DEBTOR IN POSSESSION**