In re Joseph T. KOLINSKY, Debtor.

Joseph T. KOLINSKY and Conjo Realty Corp., Plaintiffs,

v.

Abraham RUSS, Russ & Weyl, Jay Edmond Russ, Joseph P. Gagliano, and Alexander M. Goren and James G. Goren d/b/a Goren Brothers, Defendants.

Bankruptcy No. 86 B 20217.
Nos. 89 Adv. 6005, 89 Adv. 6005A.

United States Bankruptcy Court,
S.D. New York.

June 8, 1989.

Stroock & Stroock & Lavan, New York City, for defendants Gagliano, the Gorens and Jay Russ.

Russ & Weyl, Massapequa, N.Y., for defendants Abraham Russ & Russ & Weyl.

Reich & Reich, White Plains, N.Y., for Joseph T. Kolinsky.

Herrick, Feinstein, New York City, for Conjo Realty Corp.

## MOTIONS TO DISMISS THE COMPLAINT OR FOR ABSTENTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The nondebtor defendants in an adversary proceeding commenced by the debtor, Joseph T. Kolinsky ("Kolinsky"), and his wholly owned nondebtor corporation, Conjo Realty Corp. ("Conjo"), made a motion returnable on June 2, 1989, to dismiss the complaint on various grounds including lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, the defendants seek abstention pursuant to 28 U.S.C. § 1334(c). The jurisdictional objection is based on the argument that the debtor, Kolinsky, has joined the adversary proceeding as a nominal plaintiff and that the main relief is sought by the nondebtor corporate plaintiff, Conjo, which seeks to rescind a contract under which Conjo sold real estate to some of the nondebtor defendants. The nondebtor defendants who purchased the real estate from Conjo contend that this court should not entertain a cause of action for the rescission of a contract between the nondebtor defendants as purchasers, and the nondebtor corporate vendor, when the debtor, as sole shareholder of Conjo, was not a party to the contract of sale. Essentially, the nondebtor purchasers of the real estate sold to them by Conjo reason that the debtor, Kolinsky, may not pierce the veil of his own corporation, Conjo, in order to redress injuries allegedly sustained by his corporation because the debtor's rights are derivative and can be asserted only through the corporation.

In addition to the purchasers of the Conjo real estate, the other defendants are the debtor's former attorneys and the son of the debtor's former attorney, who is alleged to have acted as a broker in connection with the real estate sale by Conjo and also as attorney for the purchasing defendants. The causes of action asserted against the attorney defendants include fraud, fiduciary fraud and a claim for an accounting.

## FACTUAL BACKGROUND

On May 8, 1986, plaintiff, Joseph T. Kolinsky, filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code. He continued in possession and management of his property in accordance with 11 U.S.C. § 1108. Kolinsky was the sole shareholder of two corporations. One corporation, known as Transportation Services, Inc. ("TSI") is in the business of repairing and rebuilding gasoline and diesel engines. TSI had previously filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code on April 30, 1986. The other corporation of which Kolinsky is the sole shareholder is Conjo Realty Corp. Conjo is the owner of waterfront real property on City Island, Bronx, New York. The Conjo real estate also includes a two-story building and a one-family house. Conjo is not a debtor in any bankruptcy case. TSI is a tenant on portions of Conjo's real estate. The TSI Chapter 11 plan of reorganization was confirmed by this court on April 18, 1988.

Abraham Russ and his law firm, Russ & Weyl, formerly represented TSI and Kolinsky in their Chapter 11 cases. Abraham Russ and Russ & Weyl are also named as defendants in the adversary proceeding commenced by the debtor, Kolinsky, and his nondebtor corporation, Conjo. Jay Russ, who is the son of Abraham Russ, is also named as a defendant in the plaintiffs' adversary proceeding. Jay Russ is an attorney, but is not a member of his father's firm. Jay Russ is a member of another firm, known as Russ & Russ.

The defendants, Joseph P. Gagliano, Alexander B. Goren and his brother James G. Goren ("the purchasers") are the parties who entered into the contract with Conjo to acquire the City Island property.

### The Complaint

The complaint alleges that in early 1987, Kolinsky commenced negotiations through his attorney, Abraham Russ and Russ & Weyl, with a prospective purchaser of the Conjo real estate. The prospective purchaser was introduced by Jay Russ, acting as broker. The draft of the contract of sale provided for a sale price of $1.7 million, to be paid $100,000 as a down payment upon signing, and $200,000 together with delivery of a purchase money mortgage and note in the amount of $1.4 million at a second closing. In addition, the sum of $500,000 was to be paid by the prospective purchaser to Kolinsky's wholly owned corporation, TSI, as consideration for TSI vacating the Conjo property, and cancelling its lease. The contract provided that the purchaser would diligently provide his best efforts to obtain all variances and that thirty-six months was the maximum period for obtaining any rezoning. The sale was subject to the prospective purchaser's ability to have the property rezoned for the construction of fifty residential units and fifty boat slips.

The complaint further alleges that Abraham Russ pressured the debtor, Kolinsky, into rejecting the contract with the prospective purchaser by advising Kolinsky that the contract was not in his best interests and that Abraham Russ advised Kolinsky that his son, Jay Russ, had other potential purchasers in mind who were willing to purchase the Conjo property and that if Kolinsky did not enter into such an agreement soon it would create substantial problems with his creditors. It should be noted at this point that Kolinsky did not own the property; it was owned by Conjo, whereas Kolinsky owned all of the stock of Conjo.

The complaint then alleges that on April 7, 1987, at a meeting held in the offices of Russ & Weyl, Jay Russ represented himself as counsel to the defendants, Gagliano and the Gorens, who were collectively presented as new purchasers for the Conjo real estate. The complaint states that Abraham Russ advised Kolinsky at this meeting that the deal with Gagliano and the Gorens was in Conjo's and his best interests and that no significant changes had been made from the draft with the previous prospective purchaser except that the new purchasers had five years, rather than thirty-six months, within which to obtain all necessary zoning and all required permits and variances.

It is further alleged in the complaint that defendant, Gagliano, on behalf of himself and the Gorens, expressly represented to the debtor, Kolinsky, that the purchasers of the Conjo property would use due diligence to obtain the rezoning and all necessary permits and approvals. It is also alleged that Abraham Russ advised Kolinsky that the five-year period for obtaining variances was a mere formality and that utilizing best efforts, the purchasers would obtain all necessary permits, variances and approvals in a far shorter period. The plaintiffs then alleged that in reliance upon Abraham Russ' advice and the purchasers' representations that they would use due diligence to develop the Conjo property and obtain rezoning, the debtor, Kolinsky, executed a contract of sale dated April 7, 1987 on behalf of Conjo, as the seller, and Gagliano and the Gorens, as the purchasers. The purchase price was $1.7 million, with a $100,000 down payment upon execution. The purchasers were to pay $500,000 to TSI to cancel its lease and vacate the Conjo property. To secure the down payment of $100,000, the $500,000 payment to TSI and future advances for real estate taxes, Conjo, as seller, was to execute and deliver to the purchasers a mortgage on the Conjo property in the principal sum of $750,000. Additionally, Kolinsky entered into a separate joint venture agreement with Gagliano and the Gorens under which Kolinsky, Gagliano and the Gorens agreed to develop, construct and sell residential units, with a 70% distribution of the proceeds to the purchasers and 30% to Kolinsky. Kolinsky did not have a joint venture participation under the proposed draft with the previous prospective purchaser.

The complaint also alleges that on April 17, 1987, Russ & Weyl on behalf of Kolinsky, applied to this court for consent to permit the debtor, Kolinsky, as sole shareholder of Conjo, to obtain secured credit from the purchasers in the sum of $750,000 and to execute a mortgage upon the Conjo property. The proceeds obtained from the purchasers under the mortgage were to be paid to TSI in order to allow TSI to confirm its Chapter 11 plan of reorganization by paying TSI's creditors in full. The balance of the mortgage proceeds received by Conjo were to be held in escrow by Russ & Weyl for the purpose of use in funding Kolinsky's Chapter 11 plan of reorganization in this case. An order to this effect was signed by this court on June 18, 1987, without opposition.

Contrary to Abraham Russ' alleged representations to Kolinsky that the contract for the sale of the Conjo property contained no significant changes from the proposed draft contract with the previous potential purchaser, the complaint alleges that the contract with Gagliano and the Gorens did call for the development of 72 apartments and boat slips rather than the 50 apartments and boat slips referred to in the previous draft. Not only did the new contract allow the purchasers five years rather than thirty-six months to obtain necessary rezoning and approvals, but it did not expressly provide that time was of the essence nor did it expressly state that the purchasers shall promptly and diligently apply for all variances and permits. However, the contract did express that the purchasers were to use best efforts to obtain all variances, rezoning licenses and permits. It was agreed by the parties that Jay Russ was to receive a $200,000 commission, which was the same amount provided under the draft contract with the previous prospective purchaser.

The complaint further alleges that the purchasing defendants did pay as part of the down payment $500,000 for TSI's use in obtaining a confirmation of its Chapter 11 plan, which was achieved pursuant to an order of this court dated April 8, 1988. The purchasing defendants also paid $100,000 as a down payment which the debtor, Kolinsky, intends to use for the purpose of paying his creditors in full.

Count I of the complaint relates to all the defendants and seeks rescission of the Conjo contract for breach of fiduciary duty by Abraham Russ and Russ & Weyl and for fraud. Count I alleges that the defendants acted in concert and engaged in a scheme to defraud the plaintiffs to cause them to reject the previous contract for the sale of the Conjo property and to execute a con-

tract with Gagliano and the Gorens, which was not in the plaintiffs' best interests. The defendants are charged with having represented to Conjo and Kolinsky that the purchasers would diligently use their best efforts to obtain rezoning and proceed with development of the property, notwithstanding the five-year time period set forth in the contract. The complaint charges that the representations made by the defendants were false and misleading at the time when they were made in that the purchasers did not intend to pursue development and rezoning with due diligence and that in fact they have delayed such development of the property and have delayed paying the real estate taxes due with respect to the property.

Count II of the complaint alleges breaches of fiduciary duty by Abraham Russ and that the plaintiffs were deprived of competent and adequate representation of counsel. It is also alleged that had the true facts been known, this court would not have approved the mortgage which the debtor, Kolinsky, executed as president and sole shareholder of his nondebtor corporation, Conjo. Therefore, the plaintiffs seek rescission of the Conjo contract, the joint venture agreement between Kolinsky and the purchasers and rescission of the mortgage which Conjo issued to the purchasers.

Count III of the complaint is directed to the purchasers, Gagliano and the Gorens and alleges that the purchasers breached their contract with Conjo by not using their best efforts to obtain the necessary zoning variances and permits. Therefore, the plaintiffs seek a rescission of the Conjo contract, Kolinsky's joint venture agreement with the purchasers and Conjo's mortgage which was issued to the purchasers.

Count IV of the complaint is directed against Abraham Russ and Russ & Weyl. It is alleged that Abraham Russ and Russ & Weyl received certain monies that were to be held in escrow on behalf of the plaintiffs, Kolinsky and Conjo. It is alleged that Abraham Russ and Russ & Weyl have failed to account for the monies received and the monies paid out.

Count V of the complaint seeks restitution and punitive damages from Abraham Russ and Russ & Weyl because these defendants allegedly breached their fiduciary duty and that they are not entitled to retain fees previously paid to them for legal services rendered to Kolinsky and Conjo with respect to the Conjo contract, Kolinsky's joint venture agreement with the purchasers and the Conjo mortgage. This count also seeks to bar these attorney defendants from submitting any further applications to this court for additional compensation for legal services rendered to Kolinsky in his bankruptcy case. The plaintiffs, Kolinsky and Conjo, also seek $1 million punitive damages from Abraham Russ and Russ & Weyl for breach of fiduciary duty.

## DISCUSSION

In sum, the complaint seeks relief from two sources. First, relief is sought from the purchasers, Gagliano and the Gorens, for rescission of the contract between the nondebtor, Conjo, and the nondebtor purchasers, for fraudulent representations and for the purchasers' failure to use their best efforts to obtain the necessary zoning variances and permits. Second, relief is sought from the plaintiffs' former attorneys, Abraham Russ and Russ & Weyl for fraud, inadequate representation and for an accounting of monies received and paid. No affirmative relief is sought from defendant Jay Russ, who is the son of defendant Abraham Russ.

### Federal Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1334(b) Federal District Courts are given original jurisdiction of all cases under title 11 and all civil proceedings arising under title 11, or arising in or related to cases under title 11. In accordance with 28 U.S.C. § 157(b)(1), Bankruptcy Judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. Additionally, Bankruptcy Judges are empowered under 28 U.S.C. § 157(c)(1) to hear a proceeding that is not a core proceeding if it is otherwise related to a case under title 11.

The plaintiffs first argue that their adversary action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1), in that it either arises under title 11 or it arises in a case under title 11. Manifestly, the nondebtor Conjo's action for rescission of its contract with the nondebtor purchaser does not arise under title 11 because it does not invoke any provision of title 11. In order for a case or proceeding to arise under title 11 the relief sought must be based on a provision of title 11. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987) on remand 84 B.R. 432 (S.D.Miss.1988) ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding, for example an action by the trustee to avoid a preference."); *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir.1986); *Carlton v. Braww, Inc.*, 751 F.2d 781, 787 (5th Cir.1985). The Conjo real estate is not property of Kolinsky's Chapter 11 estate within the meaning of 11 U.S.C. § 541. Kolinsky's ownership of the Conjo corporation's stock is property of his estate, but the assets owned by the nondebtor corporation are not subject to administration under the Bankruptcy Code. The fact that the Conjo contract and mortgage were executed during the pendency of Kolinsky's Chapter 11 case and that Kolinsky expected that some of the proceeds from the Conjo sale would be made available to him for payment in full to his Chapter 11 creditors, does not mean that nondebtor Conjo's claim for rescission, due to the alleged fraudulent conduct of the defendants, implicates any provision of title 11.

If this adversary proceeding does not arise under title 11, in order for the plaintiffs to establish that it is a core proceeding, it must arise in a case under title 11.

The fifteen delineated categories in 28 U.S.C. § 157(b)(2) are not intended to be exhaustive of those cases which can constitute core proceedings, *Duck v. Munn (In re Mankin)*, 823 F.2d 1296, 1300–01 (9th Cir.1987), *cert. denied Munn v. Duck,* —— U.S. ——, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). An action by a debtor in possession to collect a post-petition debt arising from the sale of assets, even though it might depend entirely upon state law, is a matter concerning the administration of the estate within the meaning of 28 U.S.C. § 157(b)(2)(A). *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir.1987). This is so because a core determination depends not so much on whether the resolution of the proceeding may be affected by state law, but "upon its relation to the basic function of the bankruptcy court ...". *In re Arnold Print Works, Inc., supra.* Nevertheless, a proceeding arising in a title 11 case is one which would have no existence outside of the bankruptcy case. *In re Wood*, 825 F.2d at 97; *New York Life Insurance Co. v. Chase Manhattan Bank, N.A., (In re Texaco, Inc.)*, 85 B.R. 934, 937 (Bankr.S. D.N.Y.1989) (action which alleged only state-law causes of action was not core because it did not invoke a substantive right provided by title 11). Conjo's claim for rescission does not invoke a proceeding that is central to the bankruptcy court's function in administering the estate of the debtor, Kolinsky. Not only could Conjo sue the purchasers for rescission or breach of contract in a state court, but Kolinsky, as a shareholder, may not sue in his own name for any wrongs inflicted upon Conjo by the purchasers. An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name, but must be brought as a derivative action in the name of the corporation. *Jones v. Niagara Frontier Transportation Authority (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988); *Rand v. Anaconda–Ericson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985).

> A shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.

*Jones v. Niagara Frontier Transportation Authority (NFTA)*, 836 F.2d at 736. Hence, the claim for rescission of the Conjo contract does not belong to Kolinsky and

he has no standing to assert it because the claim is derivative and may be asserted only through the corporation. Accordingly, the Conjo rescission claim is not a core proceeding.

In view of the fact that Conjo's contract rescission action is not a core proceeding against Gagliano and the Gorens, such action must be "otherwise related to a case under title 11" within the meaning of 28 U.S.C. § 157(c) in order to sustain subject matter jurisdiction in this bankruptcy court. A bankruptcy judge may hear a proceeding that is not a core proceeding if it is otherwise related to a case under title 11, but the bankruptcy judge may not determine or enter final orders in a related case without the consent of all the parties, as provided under 28 U.S.C. § 157(c)(2). Absent such consent, a bankruptcy judge is required to submit proposed findings of fact and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and any additional appropriate *de novo* matters, as expressed in 28 U.S.C. § 157(c)(1).

The test for determining whether a civil proceeding is related to a bankruptcy case is—

> whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.
>
> \*    \*    \*    \*    \*    \*
>
> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in anyway impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). If a resolution of an action between nondebtors would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case. *Fietz v. Great Western*

*Savings (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988); *Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics, Inc.),* 813 F.2d 127, 131 (7th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782, 786 (8th Cir.1987); *Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 634 (6th Cir.1986); *Uranga v. Geib (In re Paso Del Norte Oil Co.),* 755 F.2d 421, 425 (5th Cir.1985); *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 341 (2d Cir.1983).

In the instant case, the contract for the sale of Conjo's real estate to the purchasers, which is annexed to the complaint, expressly provides that Conjo was required to produce at the "First Closing" an "Order of the United States Bankruptcy Court, In the Matter of Joseph T. Kolinsky, Debtor, Case # 86 B 20217, approving the sale". The contract between Conjo and the purchasers also provides that if "the Bankruptcy Court disapproves this sale, then Purchaser shall be entitled to the return of all monies deposited ...". Accordingly, the plaintiff Conjo and the defendant purchasers agreed, whether rightly or wrongly, that the contract had sufficient impact upon the debtor's estate to warrant this court's approval of the contract of sale and mortgage which Conjo issued to secure the Purchasers' $600,000 deposit under the contract. After this court entered an order on June 28, 1987 authorizing Kolinsky, as sole shareholder of Conjo, to execute and deliver a first mortgage to the purchasers, Kolinsky filed in this court his plan of reorganization dated August 18, 1988. The plan provides that the funds derived from the sale of the Conjo real estate to the purchasers and the development of the residential units on the property will satisfy the purchasers' mortgage and will be available to Kolinsky's creditors under the plan.

This is not a case where a nondebtor's action *against* the debtor's wholly owned corporation will have no affect upon the debtor's rights or on the payments to creditors, as in *Wisconsin Department of Labor and Human Rights v. Marine Bank Monroe (In re Kubly),* 818 F.2d 643 (7th Cir.1987). If the Conjo contract is rescind-

ed, the purchasers will be entitled to a return of their deposit and there will be no funds to pay Kolinsky's creditors. Such an outcome would have a negative impact upon the handling and administration of the debtor's estate. If the outcome of a collateral action might alter the debtor's rights, or has a positive or negative impact "upon the handling and administration of the bankrupt estate", such action will be regarded as related to the bankruptcy case. *Pacor, Inc. v. Higgins*, 743 F.2d at 994.

■ The purchasing defendants recognized that the contract of sale and the mortgage executed by Conjo to ensure the down payment had an impact on Kolinsky's Chapter 11 case when they provided in the contract that this court's approval of the mortgage was a condition to their down payment under the contract of sale. If Kolinsky's creditors accept his plan of reorganization, they will be entitled to rely upon the provision in the plan that the funds from the sale and development of the Conjo property will be made available to them by Kolinsky in satisfaction of their claims against him. Thus, this is not a case where the debtor seeks to pierce the corporate veil of his wholly owned subsidiary and to treat his corporation's assets as his own. Instead, this is a case where all of the parties to the collateral civil proceeding have recognized that the proceeds from the sale of the debtor's wholly owned corporation will fund the debtor's Chapter 11 plan and that the transaction between the nondebtors should be submitted for approval in the sole shareholder's bankruptcy case. Under these circumstances, a civil proceeding between the nondebtor parties involving a rescission of the contract which will produce the proceeds to fund the sole shareholder's plan of reorganization has a significant connection with the bankruptcy case and is related to such case within the meaning of 28 U.S.C. § 157(c)(1).

### Mandatory Abstention

Gagliano and the Gorens, the purchasing defendants, have argued alternatively that this court should abstain from hearing the rescission proceeding which Conjo has commenced against them. There are two types of abstentions under the Bankruptcy Code; mandatory abstention and discretionary abstention.

The doctrine of mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

■ The key factor for mandatory abstention is that the proceeding must relate to a case under title 11, but not be one "arising in or arising under a case under title 11". Mandatory abstention is inapplicable to a core proceeding. *In re Texaco Inc.*, 77 B.R. 433, 439 (Bankr.S.D.N.Y. 1987); *In re Springer–Penguin, Inc.*, 74 B.R. 879 (Bankr.S.D.N.Y.1987). This court has found that Conjo's rescission proceeding is based on a state law claim or state law cause of action, related to a case under title 11, but not arising under title 11 or arising in a case under title 11. It is also apparent that there is an absence of federal court subject matter jurisdiction over Conjo's adversary proceeding other than the existence of bankruptcy jurisdiction to which it is related. Conjo's action for contract rescission is a state law cause of action which could not be commenced in a federal court absent 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c)(1). *See In re Consulting Actuarial Partners, Ltd. PTN*, 72

B.R. 821, 828 (Bankr.S.D.N.Y.1987). Moreover, there is no dispute that the motion for abstention was made timely. Therefore, mandatory abstention is required "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction".

It is argued by the defendant purchasers that mandatory abstention is available despite the fact that no state court action had been commenced concerning the related proceeding between the nondebtor parties. A literal reading of 28 U.S.C. § 1334(c)(2) calls for mandatory abstention "if an action *is* commenced ... in a State forum of appropriate jurisdiction." (Emphasis added). In *United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court interpreted the language of 11 U.S.C. § 506(b) literally and reasoned that literal reading of a statute is not conclusive only when a literal reading will produce a result which is demonstrably contrary to the drafters' intent. The concept calling for strict construction of statutes has roots in the Old Testament: "You shall not add to the word which I command you, nor take from it." (Deut. 4:2). Therefore, absent a basis for concluding that the legislative intent called for a result other than that dictated by the statute's plain language, the courts should not deviate from its express language. The prerequisite for mandatory abstention under 28 U.S.C. § 1334(c)(2) is a pending state court case with appropriate jurisdiction. All of the district court cases dealing with this point have ruled that mandatory abstention requires a case to be pending in an appropriate forum. *In re Bates & Rogers Construction Corp.,* 97 B.R. 905 (N.D.Ill.1989); *In re Container Transport, Inc.,* 86 B.R. 804 (E.D.Pa.1988); *Ram Construction Co. v. Port Authority of Allegheny County,* 49 B.R. 363, 367 (W.D.Pa.1985). Similarly, most of the bankruptcy court judges have required a pending state court action as a condition for mandatory abstention. *In re Jackson Consolidated Industries, Inc.,* 17 B.C.D. 46 (Bankr.N.D.Ill.1988); *In re Cossett,* 75 B.R. 766 (Bankr.S.D.Ohio 1987); *In re Earle Industries, Inc.,* 72 B.R. 131

(Bankr.E.D.Pa.1987); *In re World Financial Services Center, Inc.,* 64 B.R. 980 (Bankr.S.D.Cal.1986); *In re Cemetery Development Corp., Inc.,* 59 B.R. 115 (Bankr. M.D.La.1986); *In re Krupke,* 57 B.R. 523 (Bankr.W.D.Wis.1986); *In re Baldwin-United Corp.,* 52 B.R. 541, 548 (Bankr,S.D. Ohio 1985); *In re Climate Control Engineers, Inc.,* 51 B.R. 359 (Bankr.M.D.Fla. 1985); *In re First Landmark Development Corp., Inc.,* 51 B.R. 25 (Bankr.M.D. Fla.1985); *In re Excelite Corp.,* 49 B.R. 923, 925 (Bankr.N.D.Ga.1985) and *In re Boughton,* 49 B.R. 312, 315 (Bankr.N.D.Ill. 1985) *Contra, In re World Solar Corp.,* 81 B.R. 603 (Bankr.S.D.Cal.1988).

■ In view of the fact that a pending state action in an appropriate forum is an essential element for mandatory abstention under 28 U.S.C. § 1334(c)(2), the defendant purchasers' motion for mandatory abstention must be rejected because no state court action is pending with respect to Conjo's related proceeding which seeks a rescission of the sales contract for the sale of its real estate.

### Discretionary Abstention

Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1), which provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ The Conjo adversary proceeding will have an impact on the debtor's Chapter 11 plan because the proceeds from the Conjo contract will fund his plan. Moreover, the parties have agreed in the contract in question that the debtor should obtain an order from this court approving the Conjo mortgage given to secure the defendant purchasers' down payment, which order this court approved and signed. It therefor follows that this court has federal subject matter jurisdiction over the adversary proceeding as a related proceeding within the meaning of 28 U.S.C. § 157(c)(1). Be-

cause this court has federal subject matter jurisdiction, consideration must be given to the proposition that federal courts should narrowly construe the doctrine of discretionary abstention when adjudicating controversies entrusted to the jurisdiction of the Federal court. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Mose H. Cane Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The primary concern should be whether the federal bankruptcy objectives are properly served if the Bankruptcy Court conceded its jurisdiction to a state court. *In re Texaco,* 77 B.R. 433, 438 (Bankr.S.D.N.Y.1987).

The key factors for discretionary abstention under 28 U.S.C. § 1334(c)(1) implicate: (1) the interest of justice; (2) the interest of comity with state courts; or (3) respect for state law. As to the interest of justice, an abstention with respect to the Conjo contract rescission action would not advance judicial economy or the administration of this bankruptcy case. The noncore related proceeding may require a return of the Conjo deposit, thereby posing a negative threat to the debtor's Chapter 11 plan. This fact should be determined in the context of this bankruptcy case and should not be delayed as the result of requiring Conjo to commence another case in the state court. *See In re Earle Industries, Inc.,* 72 B.R. 131, 134 (Bankr.E.D.Pa.1987); *In re Climate Control Engineers, Inc.,* 51 B.R. 359, 363 (Bankr. M.D.Fla.1985) ("Because there is no action commenced in state court covering the same subject matter ... and because the power to abstain should be exercised sparingly"). In regard to the interest of comity with state courts, there is no action pending in state court covering the same subject matter. *See In re Climate Control Engineers, Inc., supra.* As to the requirement regarding the respect for state law, the action for rescission due to an alleged fraud does not involve unsettled issues of state law or matters of sub-stantial public importance. *See Ram Construction Company, Inc. v. Port Authority of Allegheny County,* 49 B.R. at 367; *In re United Security & Communications, Inc.,* 93 B.R. 945, 961 (Bankr.S.D.Ohio 1988); *In re Jackson Consolidated Industries, Inc.,* 17 B.C.D. 46, 48 (Bankr.N.D.Ill. 1988); *In re Earle Industries, Inc.,* 72 B.R. at 133. Therefore, discretionary abstention with regard to Conjo's contract rescission proceeding is inappropriate.

### Dismissal Motion for Failure to State A Claim

All of the defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is incorporated in Bankruptcy Rule 7012(b), on the ground that the complaint fails to state a claim upon which relief sought may be granted. Additionally, they assert that the complaint fails to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, as incorporated in Bankruptcy Rule 7009, in that the circumstances constituting the fraud charges are not stated with particularity. The defendant, Jay Russ, has moved to dismiss the complaint because it fails to state a claim against him in that no relief is sought from him and there is no need for his presence as a defendant in the adversary proceeding.

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7012, on the ground that the complaint fails to state a claim upon which relief can be granted, the court must accept as true all of the well-pleaded facts alleged in the complaint. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bloor v. Carro, Spanbock, Landin, Rodman & Fass,* 754 F.2d 57 (2d Cir.1985). The motion must be granted when it appears with certainty that no set of facts could be proven at trial which would entitle the plaintiff to any relief. *Conley v. Gibson, supra, Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944); *In re Rudaw/Empirical Software Products, Inc.,* 83 B.R. 241 (Bankr.S.D.N.Y. 1988); *Trans World Airlines, Inc., et al.,*

*v. Texaco Inc., (In re Texaco Inc.),* 81 B.R. 813 (Bankr.S.D.N.Y.,1988).

■ As to the fraud and rescission claim in Count I against the defendant purchasers, the complaint sufficiently alleges in paragraph # 22 that Gagliano, on behalf of the purchasers, expressly represented that they would use due diligence to obtain the necessary rezoning and permits, whereas, as alleged in paragraph # 67 of the complaint, the purchasers did not intend at that time to pursue development and rezoning with due diligence. The complaint further alleges that the plaintiffs relied upon these representations; that Conjo entered into the contract as a result of such reliance; that the representations were false in that the purchasing defendants did not intend to pursue the rezoning variances and use their best efforts to obtain necessary permits for development of the property, and that Conjo was damaged as a result of the purchasing defendants' failure to use their best efforts. The traditional five elements required to establish fraud have been alleged; namely, misrepresentation of a material fact, falsity of that representation, scienter, reliance and damages. *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). The complaint sufficiently states with particularity a claim against the purchasing defendants for fraud in the inducement in failing to use their best efforts to pursue rezoning and development of the Conjo real estate.

■ Count III states a claim for relief against the purchasing defendants for breach of contract because they allegedly failed to use their best efforts, as promised, to pursue the necessary rezoning applications. If the purchasing defendants sat on their hands, they could be in breach of their obligation to use their best efforts. *See Western Geophysical Company of America, Inc. v. Bolt Associates,* 584 F.2d 1164, 1171 (2d Cir.1978). The allegations in the complaint sufficiently charge the purchasing defendants with failing to comply with obligations allegedly imposed under the contract of sale.

The defendant, Jay Russ, is named in the complaint as a broker and as an attorney for the purchasing defendants. No relief is sought from him, nor does the complaint allege that he made any false representations. Accordingly, the complaint must be dismissed as against him.

### The Attorney Defendants

The attorney defendants, Abraham Russ and Russ & Weyl, have also moved to dismiss the complaint for failing to state a claim for relief.

■ To the extent that Count I of the complaint seeks rescission relief with respect to the Conjo transaction from the attorney defendants, it is misdirected. The attorney defendants are not parties to the contract. They were formerly attorneys for the plaintiffs and cannot be compelled to rescind the contract between Conjo and the purchasing defendants. In so far as the debtor, Kolinsky, seeks an accounting for monies received by his former attorneys, the claim is defective because there is no allegation that he gave them any funds for which they must account or that they hold any funds belonging to him. Moreover, any claim for an accounting on behalf of the plaintiff, Conjo, has no impact on Kolinsky's Chapter 11 case and is not related to such case, within the meaning of 28 U.S.C. § 157(c)(1). Kolinsky has no standing to seek redress for an accounting for funds entrusted to the attorney defendants by Kolinsky's wholly owned subsidiary, Conjo, or for funds held by them for Conjo's benefit. Any such derivative claim must be brought in Conjo's name. *Jones v. Niagara Frontier Transportation Authority (NFTA),* 836 F.2d at 736, *cert. denied,* — U.S. ——, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988); *Rand v. Anaconda–Erickson, Inc.,* 794 F.2d at 849, *cert. denied* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d at 544. Accordingly Count I of the complaint should be dismissed as to the attorney defendants.

■ Count II of the complaint seeks a rescission of the Conjo contract, the joint venture agreement and the mortgage is-

sued by Conjo to the purchasing defendants. This count must be dismissed as against the defendant attorneys for the same reasons that Count I should be dismissed. The attorney defendants cannot be directed to rescind contracts to which they were not parties.

Count IV of the complaint seeks an accounting from the defendant attorneys. It alleges that defendants Abraham Russ and Russ & Weyl received certain monies that were to be held in escrow on behalf of and for the benefit of the plaintiffs. However, allegations in the complaint as to the escrow funds reveal that these funds may be claimed either by Conjo or TSI, the debtor's other wholly owned corporation. Hence, Count IV states no claim for relief on behalf of the debtor, Kolinsky. Therefore, Count IV shall be dismissed.

Count V is also directed against the attorney defendants. It alleges that Abraham Russ and Russ & Weyl previously were paid certain sums as compensation for legal services, including interim compensation as ordered by this court in the bankruptcy case. Evidently "the bankruptcy case" refers to the TSI case, because no interim fees were awarded to the attorney defendants in Kolinsky's Chapter 11 case, nor is there any allegation by Kolinsky that he paid any fees to the attorney defendants for legal services rendered to him. Thus, Count V is therefore legally deficient and must be dismissed.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(c). This is a related proceeding pursuant to 28 U.S.C. § 157(c)(1).

2. Pursuant to Bankruptcy Rule 5011(b), the foregoing discussion with respect to the defendants' motions for abstention under 28 U.S.C. § 1334(c) shall constitute this court's report and recommendations for the disposition of such motions. Based on such report it is recommended that the motions for abstention be denied because all of the factors for mandatory abstention under 28 U.S.C. § 1334(c)(2) have not been established. There is no pending state court action involving the subject matter of this related adversary proceeding. Moreover, discretionary abstention, as authorized under 28 U.S.C. § 1334(c)(1) is not appropriate. Discretionary abstention in this adversary proceeding would not advance the interest of justice, the interest of comity with state courts, or impinge upon respect for state law.

3. The motion made by the purchasing defendants, Gagliano and the Gorens, to dismiss the complaint pursuant to F.R.C.P. Rule 12(b)(6), F.R.C.P. Rule 9(b) and Bankruptcy Rule 7009 is denied as to Count I and Count III. Count I sufficiently states a claim for contract rescission and Count III properly states a claim for breach of contract on the part of the purchasing defendants.

4. The motion by the attorney defendants to dismiss the complaint for failing to state a claim is granted as to them with respect to Counts I, II, IV and V.

5. The motion by the defendant, Jay Russ, to dismiss the complaint as to him, because it fails to state a claim for which relief can be granted against him, is granted.

6. SETTLE ORDER in accordance with the foregoing ruling with respect to the motions to dismiss the complaint.

7. The clerk shall serve forthwith a copy of the report and recommendations upon the parties to this proceeding regarding the motions for abstention in accordance with Bankruptcy Rule 5011(b).