**Harold WARREN, Plaintiff-Appellant,**

**v.**

**MANUFACTURERS NATIONAL BANK OF DETROIT, a national banking association, Defendant-Appellee.**

**No. 84–1051.**

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1985.

Decided April 16, 1985.

 

William J. Weinstein, Weinstein, Kroll and Gordon, Joel Hoffman (argued), Southfield, Mich., for plaintiff-appellant.

Richard D. Rohr, Robert J. Diehl, Jr. (argued), Detroit, Mich., for defendant-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

The Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968, once again raises its complications in this civil dispute. Plaintiff, Harold Warren, brought this action in his individual capacity as creditor, sole shareholder, and chairman of the board of Paragon Steel Corporation ("Paragon"), claiming that Paragon was defrauded by defendant, Manufacturers National Bank of Detroit, by substantial overcharge of represented interest on a loan of several million dollars. The trial court held, however, that plaintiff, in his individual capacity, was not a proper party to pursue such an action, and accordingly dismissed the complaint.

In 1958 plaintiff and his brother founded Paragon, a steel warehousing and sales company located in Detroit, Michigan. By 1974 plaintiff had become the sole shareholder of that corporation. After acquiring sole control of Paragon, plaintiff transferred the corporate stock to a newly formed entity known as PSC Corporation, ("PSC"). PSC was wholly owned by plaintiff's son, daughter-in-law, and four others. As a part of the sales agreement, and to secure the debt owed him by PSC, plaintiff retained possession of the Paragon stock. At this time plaintiff was named chairman of the board of Paragon.

In the Spring of 1980 Paragon was allegedly approached and actively solicited by defendant to become one of its banking customers. Alleged representations were made to plaintiff at this time that Paragon could receive loans at 2½ percent over the prime rate. Defendant allegedly informed plaintiff that the prime rate was the rate

charged defendant's best clients.[1] Impressed with this presentation and acting as chairman of the board, plaintiff authorized Paragon to enter into a real estate mortgage with defendant whereby Paragon was loaned approximately ten million dollars, and whereby Paragon was obligated to pay interest at 2½ percent above the prime lending rate.

In 1982 PSC defaulted on its obligation owed to plaintiff, and pursuant to their security agreement plaintiff reassumed ownership of the Paragon stock. About this same time Paragon began experiencing cash flow problems, jeopardizing its obligation to defendant. Following an attempt to liquidate and pay off its debts, Paragon was forced into involuntary bankruptcy in July 1982.

Plaintiff claims he and Paragon were defrauded by defendant's representations that the prime rate was the rate charged its "best" customers when instead it set its prime rate above what it was charging its best customers. Because of its reliance on these fraudulent representations, Paragon at times was required to pay very high interest rates. This enormous interest rate eventually led Paragon to bankruptcy.

Plaintiff asserts that not only was Paragon injured, but also that he personally was injured in three separate capacities by defendant's fraudulent scheme. First, he was the sole shareholder of Paragon and accordingly lost his total investment when his stock became worthless. Second, he was chairman of the board and the chief executive officer of Paragon. When the corporation went bankrupt he lost not only his job, but also very substantial fringe benefits. Finally, plaintiff claims to be the major creditor both of PSC and Paragon, damaged by Paragon's bankruptcy.

The question we are called upon to address is whether plaintiff may bring an action in his individual capacity under RICO for injuries apparently inflicted upon the corporation. Plaintiff claims his injuries are different from those inflicted upon

Paragon, and that he has standing to pursue his claim under the "any person" language of 18 U.S.C. § 1964. That statute provides in relevant part that "[a]ny person injured in his business or property by reason of violation of section 1962 ... may sue therefor in any appropriate United States district court...."

■ We cannot agree with plaintiff's contention. In his capacity as a shareholder of Paragon, any injury he incurred was actually one sustained by the corporation.

An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, dimunition in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.

*Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir.) (citation omitted), *reh'g denied*, 652 F.2d 1001 (1981). *See also Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439–40 (9th Cir.1979); *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95 (6th Cir. 1975). Though plaintiff correctly points out that *Stevens, Sherman* and *Scharmer* were all cases dealing with the antitrust laws, we hold that this general rule applies with equal force to actions brought under RICO. *See also Gallagher v. Canon U.S.A., Inc.*, 588 F.Supp. 108, 110–11 (N.D. Ill.1984).

■ Plaintiff also claims injury by reason of his loss of employment. His claimed injury as an employee is not a basis of an independent cause of action under RICO because of the corporate injury. Plaintiff lost his job because *Paragon* was forced into bankruptcy. The alleged acts of fraud were directed not toward plaintiff as an employee of Paragon, but rather were directed to Paragon as a corporate entity or

---

1. These representations were allegedly made by way of the mails and telephone system, thus

giving rise to an action under RICO. *See* 18 U.S.C. § 1961(1).

person. Assuming the truth of plaintiff's claim, the fraudulent misrepresentation was made to Paragon, not to any individual as such. Any injury Warren suffered as a result of this fraud, here his lost employment, was merely incidental to the corporation's injury. Plaintiff has no more standing as an employee than he does as a shareholder of Paragon. We cannot rationally justify individual employee claims under RICO where the corporate employer is a victim.

Congress granted the right to sue to "any person," but it required that the asserted injury arise "by reason of" the challenged conduct. 18 U.S.C. § 1963(c). Here, though plaintiff's loss of employment might be characterized in one sense to be a consequence of defendant's conduct, it hardly can be said to have been directly "caused" by the asserted conduct.

■ We apply, therefore, basic principles of the law of corporations in cases of this nature. *See generally* 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 36 (rev.perm.ed.1983). Where a corporation is defrauded bringing about ultimate bankruptcy, a cause of action exists on the part of the corporation against the wrongdoer. Should the requisites of RICO be met, there may exist a federal cause of action on behalf of the corporation. Employees of the corporation who may incidentally lose their jobs do not have a fraud claim against the alleged wrongdoer.[2] Similarly, said employees do not have a claim under RICO simply because the acts of fraud satisfy 18 U.S.C. § 1961(1), thus raising the claim to a federal level.

Finally, plaintiff asserts that as a creditor of Paragon he was injured by defendant's actions and thus has stated a claim for relief under RICO. We need not decide this issue, for the record does not reflect that plaintiff was a creditor of Paragon. From the facts indicated, plaintiff was a creditor of PSC only.

We find plaintiff's reliance on *Schact v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. de-*nied, —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), to be misplaced. That case dealt with what *type* of injury was required to support a RICO claim. Here, we are not concerned with the type of injury necessary under RICO, rather our discussion focuses on the question, who is the appropriate party to bring the RICO action in the first instance. We therefore find *Schact, Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985), and *Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984), not to be pertinent on this issue.

Whether RICO should or should not be interpreted to "federalize" common law fraud is an issue distinct from whether it should be interpreted to materially expand the standing requirement applicable to such claims. Allowing every shareholder, employee and creditor a cause of action for injuries derivative of those suffered directly by a corporation does not just permit a vast amount of litigation to be brought in federal court that previously could only have been brought in state court, but creates a potential avalanche of suits that previously could not have been brought *at all.* While "Congress is of course free to create federal causes of action for civil litigants within constitutional limits," *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 487 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985), "statutes are to be interpreted with reference to the common law and generally to be given their common law meaning absent some indication to the contrary." *United States v. Monasterski Investment Co.,* 567 F.2d 677, 682 (6th Cir.1977); *cf. Harris v. American Investment Co.,* 523 F.2d 220, 224 (8th Cir.1975) ("Although the federal securities laws in several instances offer greater protection to buyers and sellers of securities than do common law concepts, ... common law fraud concepts underlie the securities laws and provide guidance as to their reach and application, particularly

---

**2.** In an action based on fraud one of the crucial elements is reliance. Employees of a defrauded corporation have no cause of action for fraud

where they have not relied on the misrepresentation. *See* Restatement (Second) of Torts § 533.

where, as here, Congress has not specified the remedies available to a defrauded buyer." (citation and footnote omitted), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976).

■ Plaintiff also argues that the district court erred in denying his motion to amend his complaint. Plaintiff proposed to add two new defendants and three new claims to the action. The new parties were defendant's parent corporation and the individual bank officer who made the alleged misrepresentations. The new claims were directed against these new defendants, and also charged all the defendants with conspiring together. These proposed amendments do not alter the relevant facts of this case. For this reason, and because we affirm the dismissal, there is no reason to address this issue. Generally "the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980). For the reasons expressed above, dismissal of the complaint was not erroneous. The judgment is accordingly AF-FIRMED.

Wellford, Circuit Judge, filed concurring statement.