[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Hospital of Saint Raphael (the "Hospital") has moved to dismiss the claims of the plaintiff Consolidated Equity Investors, Inc. ("CEI"). The grounds for the motion are that CEI lacks standing to litigate the claims because, under the allegations of its own complaint, it is a total stranger to the project in question. It argues that since CEI does not have a justiciable interest in the controversy, the court does not have subject matter jurisdiction of its claims and they should be dismissed.
This matter arises out of a major construction project (the "Project") at the Hospital. The E. F. Construction Company ("EF") served as the general contractor and construction manager pursuant to a contract with the Hospital. EF, in turn, contracted with the plaintiff Paul S. Yoney, Inc. ("Yoney") a Connecticut corporation to provide the mechanical and plumbing work for the Project.
In April, 1990, Yoney sued the Hospital, claiming to be entitled to recover from the Hospital amounts above and beyond Yoney's contractual claims. Yoney alleges that the Hospital is liable to it for millions of dollars under theories of interference with contract, unjust enrichment, negligence and misrepresentation.
In December, 1991, Yoney moved for permission to amend its complaint and to add CEI[1] as an additional plaintiff. The Hospital objected, but Yoney's counsel contended, and the Court agreed, that the question of CEI's standing would more properly be raised in a motion addressed to an Amended Complaint. Yoney and CEI served the Amended and Substituted Complaint (the "Amended Complaint") on March 25, 1992, and the Hospital has moved to dismiss CEI's claims.
In this case CEI alleges standing in its pleadings, specifically in paragraphs 2, 3 and 4 wherein it claims to be an administrative financial backer of Yoney, it has a standing CT Page 6592 agreement to pay all Yoney's obligations, file all tax returns and have on its books a reflection of all Yoney's profits and losses. It claims that this relationship is the same as any creditor, third party beneficiary or one with a statutory interest for whom standing would be clear. (See Brief in Opposition pp. 3-4)
The unrefuted statements made in the affidavits attached to the motion to dismiss expose CEI's position for what it is not as much as for what it is. CEI was not a participant in any way in the Project, nor was its existence even raised during the cause of the dealings between the hospital and Yoney. (Exs. A B.) Only when the hospital served a document request that sought Yoney, Inc.'s tax returns did the existence of CEI surface. (Ex. C.) No other documents including Yoney's financial statements, checks, orders to suppliers, subcontracts and contracts with other unions, reflected CEI's existence. (Ex. C.) Even the accountants for both Yoney and CEI during the time period pertinent to this case failed to produce any written agreement between the two entities either as specifically referenced in the complaint or suggested by counsel to substantiate any connection. (Ex. C.) In fact, the "standing agreement" as alleged in the Amended Complaint has not been evidenced, either in writing or in conduct except that the federal and state income tax returns, produced by Yoney but which were in actuality CEI's returns, show that CEI bases its tax obligations on Yoney's losses and profits. There has been no evidence of a loan that would demonstrate CEI's role as Yoney's financial backer. (Ex. C.) Nor has there been even one check drawn on CEI's name to demonstrate that corporation's assumption of the obligations it claims to have. (Amended Complaint p. 3.) In fact, CEI's role in connection with this case is contra-indicated. All obligations incurred by Yoney were paid with checks drawn on an account maintained in Yoney, Inc.'s name not CEI's. (Ex. C.) Insurance Company of North American, which provided surety bonds for Yoney during the period pertinent to this action, produced its files which contained no mention of CEI. (Ex. C) And testimony from the accounting firm that handled both Yoney's and CEI's accounts was that the income and expenses in CEI tax returns reflected construction business done directly by CEI. (Ex. C.)
CEI claims standing from a "standing agreement" by which it has agreed to pay all Yoney's obligations and in return receive all its income. However, this allegation in the complaint has been sufficiently exposed by the defendant to be nothing more than a vaguely defined relationship which is insufficient to establish that the party has some legally protected interest that could suffer more than mere incidental harm. CT Page 6593
 "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. `"`Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.'"' Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting Hiland v. Ives, 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). `"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjustifiable interest and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a `personal stake in the outcome of the controversy'; Shaskan v. Waltham Industries Corporation, 168 Conn. 43, 49, 357 A.2d 472 (1975) . . . provides the requisite assurance of `concrete adverseness' and diligent advocacy."' (citations omitted in part.) Maloney v. Pac, 183 Conn. 313, 320-21, 439 A.2d 349
(1981)."
Unisip Corp. v. Dept. of Labor, 220 Conn. 689, 693 (1991).
Where no direct legal duty is owed to the plaintiff and the plaintiff can at best claim an indirect injury as a result of the defendant's alleged acts, standing does not exist. Thus, in Connecticut, the courts have held that a 50 percent shareholder does not have standing to pursue a claim which properly belongs to his corporation. Victor Christ-James v. A.F. Conte and Company, Inc., 8 Conn. App. 83 (1986). Similarly, in Second CT Page 6594 Exeter Corporation v. Harold Epstein, 5 Conn. App. 427 (1985), cert. denied, 198 Conn. 802 (1986), the Court held that a collection agent did not have standing to sue on behalf of its principal. In Milward Corporation v. City of Hartford,1991 Conn. Sup. LEXIS 2835 (1991), the court held that a subcontractor could not challenge the failure to award a public works contract to its prime contractor. Although in each case the plaintiff plainly had a strong interest in the outcome of the litigation, it did not have a legal right against the defendant — any duties owed by the defendants did not run to these plaintiffs and any injuries suffered by these plaintiffs were only indirect or incidental.
These Connecticut cases are in accord with well established and broadly accepted legal principles. Strangers to a transaction who suffer indirect or incidental harm do not have standing to sue. Parent corporations do not have standing to sue for harm to their subsidiaries (see, e.g., Quantel Corp. v. Niemuller, 771 F. Sup. 1361 (S.D.N.Y. 1991)); lenders do not have standing to sue for wrongs done to borrowers (see, e.g., Capital National Bank of New York v. McDonald's Corporation,625 F. Sup. 874 (S.D.N.Y. 1986)); depositors do not have standing to sue for injuries to their banks (see, e.g., In re Sunrise Securities Litigation, 916 F.2d 874 (3rd Cir. 1990)); officers and employees do not have standing to sue for wrongful activities directed against their employers (see e.g., Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705
(11th Cir. 1984)).
In Warren v. Manufacturers National Bank of Detroit,759 F.2d 542 (6th Cir. 1985) the Court dismissed a RICO action brought by the plaintiff in his capacity as creditor, sole shareholder and chairman of the board of a corporation allegedly defrauded by the defendant. The Court noted that with respect to the plaintiff's claim as a shareholder, the diminution in value of the corporate assets was not the sort of direct harm which creates standing to sue. Id. at 544. Insofar as the plaintiff sued as an employee who had lost his job, the Court noted that the alleged misrepresentations by the defendant were not directed toward the plaintiff but toward the corporation, and any injury he suffered was "merely incidental" to the corporation's injury. Id. at 545.
The Second circuit reached the same result in Rand v. Anaconda — Ericsson, Inc., 794 F.2d 843 (1986), cert. denied,479 U.S. 987 (1986), dismissing for lack of standing antitrust and RICO claims brought by shareholders for alleged injuries to their company. The Court held that any legal injury was to the company and noted that an indirectly injured party must look to the recovery of the directly injured party, not to the CT Page 6595 wrongdoer, for relief.
 The shareholder's rights are merely derivative and can be asserted only through the corporation . . . . [D]imunition in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right. (citations omitted.)
Id. at 849. Although the shareholders would benefit from any recovery by the company, they had no independent cause of action.
In this case CEI has not alleged any interest or injury which is justiciable under these standards. CEI and Yoney, Inc. of Connecticut are independent and separate corporations. The Amended Complaint alleges that Yoney entered into the subcontract with EF and performed the work. It alleges that the Hospital interfered with and hindered Yoney's contractual performance; required Yoney to perform additional work; breached its duty of care to Yoney; and misrepresented facts to Yoney. Thus, CEI itself concedes in its pleadings that the Hospital owed no duty to CEI — the allegedly tortious acts were directed solely at Yoney, and only Yoney has standing to complain.
A party is entitled to prosecute a civil action as the real party in interest when he or she establishes an actual and justiciable interest in the subject matter of the litigation. A real party in interest is one who has a real, direct, actual, material, or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action. See Delio v. Earth Garden Florist, Inc., 28 Conn. App. 73, 78
(1992) (citations omitted). In determining the real party in interest courts must look beyond the nominal party whose name appears of record and consider the legal questions raised as they may affect the real party in interest.
CEI is allegedly injured only because under its vague "standing agreement" with Yoney, "its books and records" reflect Yoney's losses. (Amended Complaint, paras. 3-4.)[2] At best, it has asserted only that it is some type of creditor/beneficiary but has presented no evidence of the terms of this agreement. Its injury is entirely derivative of and incidental to any injury to Yoney,[3] and as such it does not have standing sufficient for this court to have jurisdiction.
KATZ, J. CT Page 6596