4 F.3d 1378
 72 A.F.T.R.2d 93-6242, 93-2 USTC P 50,625,
RICO Bus.Disp.Guide 8408,
Unempl.Ins.Rep. CCH (P) 17665A.38
 Robert A. FRANK (91-3311/3385), Plaintiff-Appellant,
v.
Bernard D'AMBROSI, et al., Defendants-Appellees.
and
Bernard D'AMBROSI, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellee,
Robert A. Frank (91-3529), Defendant-Counterclaimant-Appellant,
Michael L. Mogul, Attorney-Appellant.
 Nos. 91-3311, 91-3385 and 91-3529.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 21, 1992.
Decided Sept. 22, 1993.
 
 Michael L. Mogul (argued and briefed), Youngstown, OH, for plaintiff-appellant, Robert A. Frank.
 Mark I. Wallach (briefed), Joseph A. Castrodale, Christopher S. Williams, Calfee, Halter & Griswold, Cleveland, OH, for defendants-appellees Bertin Steel Processing, Inc. and Bernard D'Ambrosi.
 Anthony J. DiVenere (argued and briefed), McDonald, Hopkins, Burke & Haber, Cleveland, OH, for defendants-appellees Michtin, Inc., U.S.S., Inc., U.S.X., Inc., Robert Meyer and Robert K. Fravel.
 William B. Leahy (argued and briefed), Thompson, Hine & Flory, Cleveland, OH, for defendant-appellee Atlas-Lederer Co.
 Thomas R. Jones, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Acting Chief (briefed), Richard Farber, Bridget M. Rowan, Charles Bricken (argued), Samuel R. Lyons, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for defendant-appellee U.S.
 Michael L. Mogul, pro se.
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and GILMORE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Robert A. Frank appeals from the dismissal of his RICO suit against his former business partner, Bernard D'Ambrosi, and others. Frank also appeals from the dismissal, in another action, of his cross-claim against D'Ambrosi for contribution for unpaid taxes. In addition, Michael A. Mogul, Frank's counsel, appeals from the imposition of Rule 11 monetary sanctions against him as a result of documents he filed in the tax case. For the reasons given below, we affirm the district court on all issues.
 
 
 2
 * A
 
 
 3
 Frank and D'Ambrosi were each 50% shareholders in an Ohio steel processing company named Lornic Corporation. Frank was the president, treasurer, and one of the two directors. D'Ambrosi was the vice president, secretary, and the other member of the board of directors.
 
 
 4
 From June 1984 through June 30, 1988, USX (a subdivision of USS) had contracted with Lornic to process steel. USX allowed Lornic to process USX's steel at USX's off-site facility in Wickliffe, Ohio, using equipment belonging to USX.
 
 
 5
 On June 29, 1988, without, according to D'Ambrosi, D'Ambrosi's prior knowledge or consent, Frank told Robert Fravel, then general manager of USX's Lorain works, that Lornic was going out of business. Furthermore, Frank assembled Lornic's employees and told them that the company was shutting down as of the end of the shift.
 
 
 6
 USX, through Fravel, notified Lornic in writing on July 1, 1988, that Frank's actions constituted repudiation of the contract. Also on July 1, 1988, D'Ambrosi filed suit in Ohio state court seeking judicial dissolution of Lornic. D'Ambrosi and Frank stipulated to the dissolution, and on March 24, 1989, the state trial court entered an order dissolving Lornic.
 
 B
 
 7
 The RICO case. On June 29, 1990, Frank filed suit in federal court against Robert K. Fravel, Robert Meyer, USS Inc., USX Corporation, Bernard D'Ambrosi, Bertin Steel Processing, Michtin, and Atlas-Lederer Co. Fravel was the general manager of the USX Lorain, Ohio plant; Meyer was an employee of USX;[1] USX is the successor in interest to USS Inc., a steel manufacturing corporation. Bernard D'Ambrosi was Frank's business partner in their corporation, Lornic. Bertin Steel Processing is the company that D'Ambrosi formed around the time of the dissolution of Lornic. Michtin is a trucking firm related to Bertin, with which D'Ambrosi was affiliated. Atlas-Lederer is a company that had done business with Lornic. The ultimate complaint, after the court allowed various amendments, included both federal claims and pendent state claims.
 
 
 8
 Frank alleged that the defendants combined to form an association-in-fact enterprise through which they engaged in a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961 et seq. Frank claimed predicate acts including securities fraud, mail fraud, theft from interstate shipment of goods, and interstate transportation of stolen property. He also alleged that the defendants committed securities fraud, in violation of 15 U.S.C. Sec. 78j(b), arising from collusion between Fravel and D'Ambrosi. Frank included pendent state law claims of common law fraud against Fravel, USS, and USX.
 
 
 9
 On July 27, 1990, the district court entered a RICO case standing order, instructing Frank to file a RICO case statement explaining his RICO claims and the factual basis for them by August 16, 1990. At a status conference held on August 1, 1990, the district court entered an order establishing a discovery cut-off of December 14, 1990, and a dispositive motion cut-off of December 28, 1990.
 
 
 10
 Frank never filed the RICO case statement. Frank did not conduct discovery. Instead, Frank spent his time complaining about defendants' conduct, and making various wild and incoherent allegations about D'Ambrosi, Lornic, Bertin, and Michtin, triggering an application in state court by D'Ambrosi for a temporary restraining order.[2]
 
 
 11
 On August 22, 1990, Fravel, USS, and USX filed a motion to dismiss the complaint. Also on August 22, 1990, Meyer filed a motion to dismiss or in the alternative for summary judgment. Frank submitted, over time, nine motions for an extension of time to respond, but never filed a brief in opposition to those motions. Nonetheless, on December 6, the district court overruled the motions after Frank contended there had been inadequate time in which to conduct discovery. However, the court stated that the discovery cut-off date of December 14 and the dispositive motion cut-off date of December 28 would both stand.
 
 
 12
 On December 14, 1990, Frank moved to extend the discovery period. He had not even begun discovery as of the date of his motion. Appellees again filed a motion for summary judgment. Notwithstanding his own December 6 admonition, the court extended discovery until February 1, 1991. In addition, at Frank's request the district court extended until February 4, 1991, the time for Frank to oppose the motions for summary judgment.
 
 
 13
 On February 4, 1991, Frank filed another motion seeking an additional 35 days to oppose the summary judgment motions. The district court denied the motion. Thus, as of the February 4, 1991 deadline, Frank had still not opposed the summary judgment motions with any substantive pleading.
 
 
 14
 In the meantime, Frank noticed nine depositions for February 1, but only conducted two depositions of nonparty witnesses. Frank filed a transcript of his own statement on February 8, 1991, which he had sworn to on February 1, and which he claimed he had delivered to a court reporter on February 1, 1991, the last day of the extended discovery period. Several appellees moved to strike the statement for untimeliness, but the district court overruled the motions and let the statement stand. Then, on February 20, 1991, the district court sustained all of the appellees' motions for summary judgment and dismissed all the claims in Frank's amended complaint. The district court found there were no facts adduced that could support either the alleged predicate offenses or the RICO claim generally.
 
 
 15
 On March 6, 1991, Frank filed a "Motion to Enlarge the Time to File an Affidavit under Federal Civil Rule 56(e)," and he attached a March 5 affidavit.[3] The case had already been dismissed. On March 11, 1991, Frank moved to alter or amend the judgment under Rule 59, Fed.R.Civ.P., or in the alternative to vacate the judgment under Rule 60, Fed.R.Civ.P. On March 19, Frank filed a motion to extend both the time to file a notice of appeal and (again) the time to file a Rule 56(e) affidavit. On April 8, the court denied Frank's March 6 and March 11 motions, but by marginal entry granted the March 19 motion without specifying which portion of the motion it was granting.
 
 
 16
 Frank appeals, contending that summary judgment was improper, and that he had insufficient time to conduct discovery.[4]C
 
 
 17
 The tax case. For four nonconsecutive quarters, Lornic did not remit to the federal government the social security and income tax money it withheld from employees' paychecks, amounting to $338,859.54. 26 U.S.C. Sec. 6672(a) allows for assessment of a 100% penalty against any responsible person who is required to collect, withhold, and remit monies to the government but willfully fails to do so.[5] The IRS sought personal assessments for the entire penalty amount against both Frank and D'Ambrosi.
 
 
 18
 D'Ambrosi paid a portion of the assessment, then made a refund claim. When the IRS denied the refund, D'Ambrosi filed suit on April 28, 1989, seeking a refund of the tax paid and an abatement of the balance of the assessment. The United States filed a counterclaim for the balance of the assessment, and filed a third-party complaint against Frank for the penalty amount. D'Ambrosi asserted affirmative defenses: that the counterclaim was subject to a setoff because the government had received partial payment, and that the counterclaim was barred by the statute of limitations.
 
 
 19
 Approximately eight months later, with no explanation as to its untimeliness, Frank filed a reply, which basically parroted D'Ambrosi's affirmative defenses.
 
 
 20
 On May 1, 1990, D'Ambrosi and the government entered settlement negotiations. The government also sought summary judgment against Frank. On June 12, 1990, Frank responded by conceding liability, but asserted the defense of partial payment and setoff and asserted a right of contribution against D'Ambrosi, who he claimed was a jointly and severally liable co-party. Frank also moved to reopen discovery so that he could establish D'Ambrosi's liability and sought to amend his answer to add a cross-claim against D'Ambrosi, alleging that when the litigation proceeded to the collection phase he would have a right as a jointly and severally liable party to contribution from D'Ambrosi for money or property that he, Frank, had paid to the United States.
 
 
 21
 On June 22, 1990, D'Ambrosi filed an opposition to Frank's motion to amend. D'Ambrosi also sought sanctions under Rule 11, Fed.R.Civ.P., against Michael Mogul, Frank's counsel. D'Ambrosi argued that Mogul had not researched controlling law at all, because clear precedent held that in the "absence of legislation there is no right of contribution between tortfeasors" under Sec. 6672. Sinder v. United States, 655 F.2d 729, 732 (6th Cir.1981). In the face of established law, the motion was frivolous.
 
 
 22
 On July 9, 1990, Mogul responded to D'Ambrosi's motion, admitting that he had failed to research controlling law, claiming that his motion had been mischaracterized as based on federal common law only, and seeking leave to amend to clarify that the cross-claim he sought to add was based on state law.
 
 
 23
 On July 27, 1990, the district court granted the government's summary judgment motion against Frank, denied Frank's motion for leave to amend, denied Frank's motion to re-open discovery, and granted D'Ambrosi's motion for sanctions against Mogul. The court noted that Frank's challenge to the amount of his liability did not prevent summary judgment on liability because there was a prima facie case that Frank was responsible. Because the liability was joint and several, summary judgment was proper. The court also held that there was, under Sinder, no federal right of contribution. Any state right of contribution Frank might have was premature because that cause of action does not ripen until one party pays more than his just share and Frank had paid nothing. Mogul was ordered to pay D'Ambrosi $1065.60 by September 1, 1990.
 
 
 24
 On August 17, 1990, Frank filed a motion to alter or amend the district court's judgment. Among other arguments, Frank contended that it was error to deny his cross-claim for contribution because the terms of any agreement between D'Ambrosi and the government had not been before the court when the court made its ruling. Ten days later, Frank filed a (premature) notice of appeal.
 
 
 25
 On October 2, 1990, the district court denied Frank's motion to alter and amend the judgment. After a series of additional motions on the sanctions, Mogul paid D'Ambrosi on February 4, 1991.
 
 
 26
 On April 24, 1991, a final judgment in favor of the government was entered against Frank in the amount of $210,531.02 plus $55,997.98 in interest, for a total of $262,529.00. On June 5, 1991, Frank filed a (timely) notice of appeal. He argues that the trial court erred in denying him leave to amend his pleadings, denying him leave to cross-claim for contribution, and imposing sanctions on Mogul.
 
 II
 The RICO Case (No. 91-3385)
 
 27
 Frank's RICO claims are unusually opaque. He contends that there was some unspecified fraudulent and deceitful scheme by D'Ambrosi and Fravel that affected Lornic's operating assets and business and therefore totally destroyed the value of Frank's stock in Lornic. In his brief, he concludes that he was the target of a RICO scheme, but his complaint focuses on Lornic as victim. Frank contends that there was an association-in-fact that participated in some fraudulent activity. But he has never made clear who participated in the association, what its criminal end was, or what activity it engaged in.
 
 
 28
 * Before we address the arguments on the merits, we will address two procedural issues Frank raised. He contends that he had inadequate time in which to conduct discovery, and he contends that summary judgment was inappropriate because there are outstanding controverted genuine issues of material fact.
 
 
 29
 Discovery. Frank contends the trial court erred by cutting off discovery before he had adequate time. To define adequate, particularly in RICO violations, by a bright-line rule is problematic. However, looking at the procedural history of this litigation, it is abundantly clear that Frank has had sufficient time. Furthermore, he has been so outrageously dilatory in using the time he has been granted that there is no reason to believe giving him more will yield anything but interminable requests for more extensions. He has let deadlines pass without action of any sort. He has not completed the depositions he has noticed. He complained in his brief that appellees were obstructionist but he did not raise that issue before the trial court, nor ask for orders to compel nor ask for sanctions. All he has done is to submit one late affidavit from himself and claim that the affidavit should allow him to survive a motion for summary judgment because those unsupported allegations show that there are genuine issues of material fact. He misunderstands the law.
 
 
 30
 Summary Judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597 (6th Cir.1988). It is not sufficient for Frank to claim that the jury might believe his wild and unsupported statements. To withstand a defense motion for summary judgment, he must adduce some concrete evidence on which a reasonable juror could return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Frank has adduced no evidence that even begins to support any of his claims. Notwithstanding the generosity of the trial court in repeatedly extending discovery deadlines, Frank has failed to gather any evidence and has even failed to request extensions in a timely manner. He has not been able to demonstrate that any admissible evidence on the requisite elements of the claim exists such that any reasonable person could find for him. Summary judgment is entirely appropriate against Frank because he has not given a hint of an ability to make a prima facie case.B
 
 
 31
 On the merits, there are three independent reasons to affirm.
 
 
 32
 Standing. Frank lacks standing to pursue this claim. The wrongs and injuries that Frank alleges were all directed at Lornic. Frank does not have standing to bring a RICO action for wrongs to Lornic in a direct suit as shareholder, Warren v. Manufacturers National Bank of Detroit, 759 F.2d 542, 544 (6th Cir.1985) (action to redress injuries to corporation cannot be maintained by shareholder in own name; must be brought in name of corporation either by corporation or as shareholder derivative suit).[6]
 
 
 33
 Frank also lacks standing to sue in his position as employee. Ibid. In Warren, an employee lost his job because the corporation went bankrupt. The court held that Warren had no right of action independent of whatever action the corporation had. For an employee to have standing, he must have had an injury inflicted directly on him that was caused by the RICO activity. Indirect injuries that occur as a result of someone's status as employee of a damaged industry or company do not confer standing. Warren, 759 F.2d at 544-45.
 
 
 34
 Lack of predicate offenses. Frank has insufficiently alleged a foundation for the RICO violations--irrespective of who brings the action. To prove a RICO violation, Frank must show: 1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to his business or property by reason of the above. Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 274 n. 5 (9th Cir.1988).
 
 
 35
 Only those acts itemized in 18 U.S.C. Sec. 1961(1) can constitute predicate offenses for RICO violations. In his complaint, Frank alleged mail fraud, securities violations and theft. In his brief, he included what he characterizes as Dyer Act violations, 18 U.S.C. Secs. 2311-13. His other allegations against appellees, involving breach of contract, anticipatory repudiation and corporate management disagreements, cannot support a RICO violation.
 
 
 36
 Frank did not adequately support his mail fraud claim. Frank's mail fraud allegation consists of the fact that Fravel sent a letter to Frank with his (Fravel's) understanding of a conversation between the two of them that Lornic was dissolving. Thus, Fravel was confirming that if Lornic was ceasing operation, USX would consider that a repudiation of the contract and it would contract for the processing from some other firm. Frank's claim that the letter was a part of Fravel's efforts to wrest control of Lornic from him (Frank), and that therefore it should be considered mail fraud and a predicate act is absurd. That does not constitute mail fraud as defined in the statute--at most it represents a fight for control of Lornic.
 
 
 37
 Frank has presented no cognizable securities laws violations. Frank has alleged that defendants committed various violations of Sec. 10(b) of the Securities and Exchange Act of 1934, and of Rule 10b-5 promulgated thereunder. To recover under Rule 10b-5, a plaintiff must prove, among other things, that he bought or sold a security. Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1026 (6th Cir.1979). We need not examine each of the elements because Frank was not a seller of a security.
 
 
 38
 Frank claims that the judicial dissolution of Lornic was effectively a forced sale of securities. Forced sales do not include all sales that have some element of compulsion. Furthermore, in the case at bar, there was no sale, forced or otherwise, of a security--there was dissolution of the corporation pursuant to a consent decree that was signed by both Frank and D'Ambrosi. Frank owned then, and continues to own, 50% of Lornic's stock, and 50% of its assets and liabilities--he cannot now seriously contend that the dissolution was a forced sale.
 
 
 39
 Frank has erratically argued various interstate shipment thefts. He has never coherently stated what he claims was stolen, whether it was in interstate commerce, or who stole it.
 
 
 40
 The explanation of one of the Dyer Act claims in his brief (Frank brief at 7) is: "In the second of three Dyer Act violations, Bernie converted in September of 1985 USX's steel after it was treated by Lindberg Heat Treating Co." The Dyer Act violation was not charged in the original complaint. The Dyer Act only prohibits interstate theft of motor vehicles and aircraft. We fail to see how conversion of raw steel fits within the terms of the Dyer Act, nor how a bald-faced statement in a brief can be a predicate act for RICO charges in the absence of a pleading.[7]
 
 
 41
 Enterprise requirement. To prove the existence of an enterprise, Frank alleged that the appellees combined to form an association-in-fact. To satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages. United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981). Frank has not even cogently alleged any activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.
 
 
 42
 With no predicate offenses, and no enterprise, it is clear that Frank cannot prove either injury or nexus between the non-existent injury and the actions of the non-existent enterprise.
 
 
 43
 Frank has carried on a pattern of harassment against the defendants in this case that is astounding in scope, lack of focus, lack of basis, and sheer incoherence. As a result, the defendants have been forced to, in a costly fashion, defend themselves from his repeated, spurious legal forays. He has presented no basis on which he should be allowed to proceed against the defendants.
 
 III
 The Tax Case (No. 91-3529)
 
 44
 The district court's grant of summary judgment was correct.[8] The IRS is not required to collect delinquent employment taxes from corporate assets before proceeding against corporate officials. Calderone v. United States, 799 F.2d 254, 257 (6th Cir.1986) (quoting Datlof v. United States, 370 F.2d 655, 656 (3rd Cir.1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967) (citations omitted)). If, as Frank seems to insist, there were corporate assets available with which to satisfy the assessment, as a corporate officer he was responsible for turning those assets over to the IRS. Had he done so, his personal liability would have been reduced. Gens v. United States, 615 F.2d 1335, 1339-40, 222 Ct.Cl. 407 (1980).
 
 
 45
 Frank insists that the trial court erred in refusing to allow him to amend his pleadings. Leave to amend pleadings should be freely granted when justice requires. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, a trial court need not grant leave to amend when the amendment would be futile. Thiokol Corp. v. Dept. of Treasury, State of Michigan, Revenue Division, 987 F.2d 376, 383 (6th Cir.1993); Marx v. Centran Corp., 747 F.2d 1536, 1550 (6th Cir.1984). There is nothing new in his proposed amended pleadings. The trial court did not err.
 
 
 46
 The district court also correctly rejected Frank's attempts to assert a right of contribution. This court has explicitly held that there is no federal right of contribution under Sec. 6672. See Sinder. This court has also explicitly held there is no right of contribution under Ohio law for joint tortfeasors under Sec. 6672. McDermitt v. United States, 954 F.2d 1245, 1252 (6th Cir.1992) states:
 
 
 47
 ... Ohio law is quite clear. Ohio Revised Code Sec. 2307.31 provides for contributions among joint tortfeasors in situations where "two or more persons are jointly and severally liable in tort for the same injury or loss to person or property." Subsection (E) specifically provides that section 2307.31 "does not apply to breaches of trust or of other fiduciary obligations," thus eliminating the right to contribution in those situations.
 
 
 48
 This court has recognized that an employer holds withheld taxes in trust for the United States.
 
 
 49
 Furthermore, if there were a claim, it would be premature as Frank has made no payment of any sort to the government, and therefore cannot assert that he has paid more than his share. Frank's contentions are entirely without merit.
 
 IV
 Sanctions
 
 50
 We review the district court's imposition of sanctions on Mogul for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 385-86, 110 S.Ct. 2447, 2450, 110 L.Ed.2d 359 (1990).
 
 
 51
 On the motion to assert a cross-claim, the district court recognized that Mogul had not researched the law at all. Mogul admitted as much, and it was clear that Sinder was controlling. The sanctions were entirely appropriate.
 
 
 52
 We AFFIRM, in all respects, Judge Krenzler's orders in the RICO case, and Judge Aldrich's orders in the tax and sanctions cases.
 
 
 
 *
 The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Meyer left USX's employ on June 30, 1986
 
 
 [2]
 Frank's brief at 15 states that: "On April 27, 1990 Bob [Frank] sent USX's CEO a Star Trek story with Captain Lornic telling 'Captain Corry' Fravel helped [sic] the 'Bertin Galaxy' plan and execute the destruction of Lornic, and although Bernie [D'Ambrosi] 'has stolen from you, you continue to embrace him.' " The TRO was granted, but Frank remained undaunted, continuing his campaign against D'Ambrosi. His behavior triggered a January 28, 1991 order to show cause why he should not be held in contempt
 
 
 [3]
 Rule 56(e), Fed.R.Civ.P., concerns the affidavits admissible in opposition to a summary judgment motion. It makes no mention of time limits for filing the affidavits. However, since the case had already been decided, submission of affidavits would have been untimely
 
 
 [4]
 Frank appealed twice, Case Nos. 91-3311 and 91-3385. No. 91-3311 was filed on March 22, 1991, appealing from the February 20 grant of summary judgment. No. 91-3385 was filed on April 17, 1991, appealing also from the April 8 denials of his Rule 59 and 60 motions
 
 
 [5]
 "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over...." 26 U.S.C. Sec. 6672(a)
 
 
 [6]
 Frank even acknowledges this in his brief, and cites Warren himself
 
 
 [7]
 Another "Dyer Act" violation argued in the brief (Frank brief at 8), also unsupported in the pleadings was: "In March of 1988, USX's counsel put Bob on notice of the third Dyer Act violation involving Bernie. Bob did not known [sic] Bernie helped remove stencil markings from secondary drill pipe CSK Industries, Inc. resold as prime drill pipe ..."
 
 
 [8]
 The grant of summary judgment was not sua sponte, as Frank alleges in his brief (Frank brief at 24-25). It was on the government's motion: a motion to which Frank responded and conceded liability