Dean ROBINSON, et al., Plaintiffs,

v.

Gary HAWKINS, et al., Defendants.

No. 4:96CV213 CDP.

United States District Court,
E.D. Missouri,
Eastern Division.

Sept. 26, 1996.

William R. Stahlhuth, Stahlhuth and Rudder, St. Louis, MO, for Dean Robinson, Kathryn Robinson.

Mark G. Arnold, Alene V. Haskell, Husch and Eppenberger, St. Louis, MO, for Gary Hawkins, Brenda Haalboom, Thomas Zorumski.

David L. Campbell, St. Louis, MO, for Robert J. Meyer.

Don R. Sherman, Goffstein and Kraus, St. Louis, MO, for Mark Linomaz.

## MEMORANDUM AND ORDER

PERRY, District Judge.

This matter is before the Court on defendants' motions to dismiss and on various other motions. Plaintiffs' two-count complaint, purportedly brought as a shareholder derivative suit under Rule 23.1, Fed.R.Civ.P., alleges that defendants violated and conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, by using mail and interstate wire facilities to implement an allegedly fraudulent scheme to terminate certain insurance plans.

For the reasons described in more detail herein, the Court concludes that plaintiffs do not have standing to bring this suit, because the complaint alleges that defendants' schemes were directed only at their corporation and that the injury was suffered only by the corporation. Moreover, even if the corporation could be substituted as to the plaintiff in this case, the complaint fails to state a claim under RICO because it fails to allege the continuity required to show a RICO pattern of racketeering activity. Defendants' motions to dismiss will therefore be granted, the remaining motions will be denied as moot, and plaintiffs' complaint will be dismissed in its entirety.

### I. Background

Plaintiffs Dean and Kathryn Robinson are president and vice-president of Webster Hardware, Inc. They are also Webster's sole shareholders. The complaint alleges that Webster entered into a "Group Service Agreement" contract with Sanus Health Plan, Inc. in 1988, and pursuant to that contract purchased medical insurance for its Employee Welfare Benefit Plan. Apparently there was only one employee other than the Robinsons covered by the plan. Webster was the "group" purchasing the plan and paid the premiums. Defendants Gary Hawkins, Brenda Haalboom, Thomas Zorumski,

and "Jane Doe" were Sanus employees. Defendants Robert Meyer and Mark Linomaz were employed by Meyer Group, Inc., the insurance agent who arranged for Webster to contract with Sanus for the health insurance plan.

This is the third lawsuit arising out of the plaintiffs' dispute with Sanus. Plaintiffs filed their first suit against Sanus in 1991, but dismissed that case without prejudice in April 1993. In July 1993 the Robinsons and Webster filed a suit against Linomaz, Meyer Group, Inc., and Sanus, based on the same general facts at issue here (the plan cancellation), and alleging various state-law tort theories. That complaint was dismissed by United States District Judge Donald J. Stohr as being preempted under the Employee Retirement Income Security Act. Judge Stohr rejected plaintiffs' arguments that their claim did not "relate to" an Employee Welfare Benefit Plan and that the Robinsons were not "participants" in such a plan. *Robinson v. Linomaz*, No. 4:93CV1721 DJS (E.D.Mo. Feb. 7, 1994). Plaintiffs declined to restate their claims under ERISA, and the Eighth Circuit Court of Appeals affirmed Judge Stohr's decision that ERISA preempted the state claims. *Robinson v. Linomaz*, 58 F.3d 365 (8th Cir.1995). Plaintiffs then filed this RICO suit. Initially plaintiffs acted *pro se,* but after they filed the suit an attorney entered an appearance for them. They have not sought to amend, however, and so the case proceeds on the original *pro se* complaint.

Plaintiffs have not sued Sanus in this case, but instead sue the individual employees of Sanus and Meyer Group for violating RICO by allegedly engaging in a fraudulent scheme to cancel smaller, unprofitable plans, including Webster's. According to plaintiffs, defendant Haalboom, Sanus' director of finance, identified several group plans as being "risky non-profitable plans" in early 1990. Haalboom and Hawkins then allegedly formulated a scheme to cancel these plans by telling the customers that Sanus would no longer insure plans with fewer than five full-time employees. Plaintiffs allege that this was fraudulent because Sanus applied this change only to unprofitable plans, not to all small plans.

Webster received a letter in May 1990 indicating that as of July 1, 1990, its plan would be cancelled because it did not meet this five-member requirement. Plaintiffs claim that the letter was mailed by defendant Robert Meyer, president of the Meyer Group; plaintiffs allege that Meyer had knowledge of the fraudulent scheme when he mailed the letter to Webster and to select owners of other unprofitable plans. Plaintiffs therefore allege this mailing as a RICO predicate act, contending it constituted mail fraud, and contend that Haalboom, Hawkins, and Meyer are responsible for the fraudulent mailing. Plaintiffs allege a second act of mail fraud in Sanus's mailing its final invoice to Webster. Later, in August of 1990, plaintiff Dean Robinson made a telephone call to defendant Linomatz, who happened to be in Memphis, Tennessee, at the time. In the phone call Linomatz denied responsibility for any alleged fraud; plaintiffs contend this call constituted wire fraud.

Plaintiffs allege that "Jane Doe," an unidentified Sanus employee to whom Dean Robinson spoke on the telephone about the cancellation, participated in the scheme by failing to inform Mr. Robinson of Webster's conversion rights, which would have required Sanus to continue Webster's plan if Webster had made the proper request in writing within 30 days of the July 1, 1990 cancellation. Plaintiffs assert that defendant Doe deliberately deflected Mr. Robinson's inquiries following the cancellation, and that in reliance on Doe's statements that she would check on the situation, Robinson failed to request conversion within the 30–day window. Although Doe is alleged to be part of the conspiracy and is named in both counts, she is not alleged to have undertaken any acts of wire fraud herself, since all the telephone calls with her were intrastate, and not interstate calls.

Plaintiffs also allege that Zorumski, in 1992, mailed a letter to the Missouri Department of Insurance falsely stating that the cancellations had occurred as a result of a genuine Sanus policy change. This is also alleged to be an act of mail fraud. Finally, plaintiffs claim that Mr. Robinson called Hawkins in Oklahoma City in 1993 regarding Hawkins' part in the alleged scheme, but that Hawkins maintained he had no knowledge of the policy cancellations; this is alleged to be an act of wire fraud.

The RICO "enterprise" is alleged to be either Sanus itself or Sanus and the Meyer Group, as an "association-in-fact" RICO enterprise. The complaint alleges that Webster Hardware has been injured in its business or property. It does not allege any injury to the individual plaintiffs.

## II. *Discussion*

The purpose of a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., is to test the legal sufficiency of the complaint. A complaint should not be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id.; see also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

### A. *Standing*

RICO's civil remedy provision, contained in 18 U.S.C. § 1964(c), provides a private cause of action for, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter...." Defendants argue that plaintiffs lack standing to sue under this provision because only Webster Hardware suffered any injury to its business or property. Plaintiffs concede that Webster was the injured party, but argue that they may bring this action derivatively under Rule 23.1, Fed.R.Civ.P.

Several circuits have held that a corporate shareholder may not bring suit to recover under § 1964(c) where the injury was to the corporation's business or property. In *Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542, 543 (6th Cir.1985), the plaintiff brought an action under section 1964(c) in his individual capacity as creditor, sole shareholder, and chairman of the board of Paragon Steel Corporation ("Paragon"), claiming that

defendant defrauded Paragon. The court rejected plaintiff's claim that he, as a shareholder or an employee, had standing to sue under section 1964(c), and ruled that any injury plaintiff suffered as a result of this fraud was merely incidental to the corporation's injury. *Id.* at 545; *see also Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 959 (7th Cir.1996); *Frank v. D'Ambrosi,* 4 F.3d 1378, 1385 (6th Cir.1993). "We cannot rationally justify individual employee claims under RICO where the corporate employer is a victim." *Warren,* 759 F.2d at 545.

■ Here, too, the complaint alleges that defendants' RICO violations were directed toward Webster Hardware, not toward plaintiffs: Webster was the group purchasing the health insurance, the complaint alleges that the purpose of the illegal scheme was to defraud Webster Hardware, and the only injuries alleged were to Webster's "business and property." Although plaintiffs could have alleged that they suffered as a result of the alleged fraud (by loss of insurance benefits), they have not done so, presumably because that would give rise to the same ERISA preemption issues that they have previously litigated. Clearly, plaintiffs do not have individual standing to maintain this action under RICO, given the allegations of their complaint.

■ Plaintiffs argue that even if they lack personal standing, they may sue derivatively under Rule 23.1, Fed.R.Civ.P. Rule 23.1 allows one or more shareholders to sue to enforce a right of a corporation, the corporation "having failed to enforce a right which may properly be asserted by it." Here plaintiffs make no argument that Webster has failed to enforce its rights; plaintiffs apparently brought this suit derivatively on Webster's behalf simply to avoid the well-established rule that corporations cannot represent themselves in court. Plaintiffs make several arguments to the effect that if the derivative action is not allowed the Court should either appoint counsel for Webster or allow Mr. Robinson to represent the corporation. Counsel has now entered an appearance on behalf of the plaintiffs, however, and has not sought to amend the complaint to name Webster as a plaintiff. Doing so, of course, might have given rise to additional problems, but since no effort has been made to add Webster as a plaintiff, the Court will consider this as a Rule 23.1 issue.

■ It is clear that plaintiffs control Webster, and their attempt to sue derivatively is not appropriate under Rule 23.1, as Webster has not failed to enforce any rights which might properly be asserted by it. Rule 23.1 was never intended to allow assertion of a right where standing is lacking or where there might be some other bar to relief. It was intended to protect shareholders from breach of duty by corporate managers. *See, e.g., Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 1715, 114 L.Ed.2d 152 (1991). In general, a shareholder may not file a derivative suit unless the corporation has refused to act to enforce its rights. *Id.,* 500 U.S. at 96, 111 S.Ct. at 1716. In this case plaintiffs simply are using Rule 23.1 to overcome other procedural or substantive bars to the litigation, which Rule 23.1 was never intended to do. Plaintiffs therefore lack standing to bring the RICO claims they have asserted.

## B. *Pattern of Racketeering Activity*

■ Even if standing existed or if Webster could be substituted as a plaintiff, the case must nevertheless be dismissed because it fails to state a claim on which relief may be granted under the RICO statute. The closed-ended scheme lasting only a few months alleged here does not satisfy RICO's continuity requirement.

For persons injured in their business or property to recover under RICO's civil remedy provision they must, of course, show an underlying RICO violation. Here Count I attempts to allege a violation of 18 U.S.C. § 1962(c), that is, that defendants were persons associated with an enterprise affecting commerce who conducted or participated "in the conduct of such enterprise's affairs through a pattern of racketeering activity." Count II attempts to allege a conspiracy to violate RICO, under 18 U.S.C. § 1962(d). Both provisions, of course, require allegations of a pattern of racketeering activity. RICO defines a "pattern of racketeering ac-

tivity" as "requir[ing] at least two acts of racketeering activity." *See* 18 U.S.C. § 1961(5). The defined acts of racketeering activity include, among others, mail and wire fraud.

▮ The pattern of racketeering activity requirement, however, is not necessarily satisfied by the mere allegation that two acts of mail fraud occurred. Rather, the RICO pattern requires plaintiff to show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *United Healthcare Corp. v. American Trade Insurance Company, Ltd.,* 88 F.3d 563, 571 (8th Cir.1996). Here plaintiffs have alleged two related acts of mail fraud, but defendants argue they have not, and cannot, allege the requisite continuity.

In *H.J.* the Supreme Court held that the required continuity could be both closed-ended or open-ended, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.,* 492 U.S. at 241, 109 S.Ct. at 2901. The Court stated:

> [a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

492 U.S. at 242, 109 S.Ct. at 2902. The Eighth Circuit, in applying *H.J.* in *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.,* 986 F.2d 1208, 1215 (8th Cir. 1993), held that the requirement of continuity over a closed period is not met when the predicate acts merely extended for eleven months. On the other hand, in *United Healthcare, supra,* the Court held that plaintiff had shown the required continuity where the racketeering acts were undertaken regularly over a "lengthy" period, which appears to have covered at least two years, if not more. 88 F.3d at 572.

▮ The complaint here alleges that defendants' scheme started in early 1990 when Haalboom and Hawkins allegedly developed the plan to cancel unprofitable small plans, continued through the July 1, 1990, cancellation of Webster's plan, and ended no later than August 1990, when plaintiffs' 30–day conversion window closed. This alleged scheme lasted at most eight months, and, under the facts of this case, this period is not long enough to satisfy RICO's continuity requirement. *Cf. Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 994 (8th Cir.1989) (holding that conduct lasting over three years satisfied RICO's continuity requirement). Although plaintiffs allege that defendants engaged in various actions in 1992 and 1993 intended to cover up the alleged fraud, a RICO conspiracy ends when the substantive misconduct ends and does not continue merely because the conspirators take steps to cover up the traces of their main criminal purpose. *See Davis v. Grusemeyer,* 996 F.2d 617, 626–27 (3d Cir.1993); *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir.1992); *Aldridge v. Lily–Tulip, Inc.,* 953 F.2d 587, 593–94 (11th Cir.1992). The alleged predicate acts—two mailings and one interstate telephone call in 1990—cannot be said to amount to or pose a threat of continued criminal activity. *See H.J.,* 492 U.S. at 239, 109 S.Ct. at 2900, *quoted in Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765, 769 (8th Cir.1992). And while plaintiffs claim defendants' actions were directed at more than one business, this, without more, does not satisfy the continuity requirement. *See Miller v. Gain Financial, Inc.,* 995 F.2d 706, 709 (7th Cir.1993) ("A single scheme which lasts only a short period does not have the requisite continuity, even if there are multiple predicate acts and victims"); *cf. Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1132 (3d Cir.1988) (finding that the number of victims is a fact to be considered in determining the existence of a RICO pattern).

The instant case involves allegations of a closed-ended scheme that started in early 1990 and ended in August 1990. The alleged pattern of racketeering activity consists of mailing Webster's cancellation notice, mailing

the final insurance bill, and one interstate telephone call placed by plaintiff to discuss the cancellation. One later mailing and one additional interstate telephone call in which the defendants denied plaintiffs' allegations of wrongdoing do not transform this limited activity into a RICO pattern of racketeering activity. The allegations here entirely fail to satisfy RICO's continuity requirement, and the motions to dismiss will be granted.

### C. *Jane Doe*

Defendant Jane Doe has never been identified or served with process, and the Court previously ordered plaintiffs to show cause why this case should not be dismissed without prejudice against Doe for failure to serve process within 120 days. Plaintiffs did not respond to that order, and so dismissal without prejudice pursuant to Rule 4(m), Fed. R.Civ.P., is proper. Because it is clear, however, that plaintiffs' complaint fails to state a claim against this defendant, the Court will dismiss the complaint as to Jane Doe, as to all defendants, with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss [# 7–1, # 19–1, # 28–1] are granted.

**IT IS FURTHER ORDERED** that the complaint is dismissed as to all defendants, and that all other pending motions are denied as moot.